## GREENFIELD & WIFE VS. CARLTON.

1. PLEADING: *Reversing demurrer in answer.*
   Though the answer go to the whole of the complaint, a demurrer may be embodied in it, and it must be taken up and considered separately before the cause is called for trial on the issues of fact.
2. ————: *Practice in failure to verify pleadings.*
   The want of verification cannot be taken advantage of by demurrer, it must be by motion, or rule.
3. PLEADING: *Bill for specific performance.*
   In a complaint to enforce the specific performance of a contract it is not necessary to allege the defendant's ability to perform; it is sufficient, on demurrer, if the complaint state the facts constituting plaintiff's cause of action. The jurisdiction of Courts of Equity to decree specific performance reviewed.

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. JOHN A. WILLIAMS, Circuit Judge.

*Met L. Jones*, for appellants.

It is incorrect practice to answer the whole complaint, and also demur to the whole, and then take up the demurrer and

argue it before hearing. It simply reserves objection to the jurisdiction, and sufficiency of cause of action to be determined at the hearing. Sections 4588 and 4590 of Gantt's Digest should be construed with sec. 4568. See *Davis* v. *Hines*, 6 Ohio St., 473; *Slocum* v. *Wheeler*, 4 How. Pr., 373; *Spellman* v. *Wieder*, 5 ib., 5; *Howard* v. *Mich. & S. R. R. Co.*, ib., 206; *Burr* v. *Wright*, 9 How. Pr., 542; *Ingraham* v. *Baldwin*, 12 Barb., 9; *Mun* v. *Barnum*, 12 How., 563; Myers Ky. Code, 364.

Want of tender of a deed of the exact nature, stipulated for is no objection, when the complainant may, and offers to execute the deed required. Sto. Eq. Ju., sec's 747, 771, 775, 776, 777; *Taylor* v. *Langworth*, 14 Peters R., 172; *Mechanics Bank of Alexandria* v. *Lynn*, 1 Peters R., 376; *Hepburn* v. *Auld*, 5 Cranch, 262. Courts regard the instruction and substance, not the form. Sto. Eq. Ju., sec. 791. See *Smith* v. *Robinson*, 13 Ark., 534; *Harris* v. *King*, 16 Ark., 126; *Moore* v. *Anders*, 14 Ark., 633; 2 Farr. Eq., Book 1, ch. 6, sec. 2, n. e. The first clause of the contract governs, when inconsistent. 2 Black. Com., 381.

Jurisdiction vests of specific performance. Sto. Eq. Ju., 716-17, n 738 to 742 *et seq.*; Fonb'l. Book 1, ch. 3, p. 154, n. 1. Sto. Eq. Ju., 790, 788; Do. Pleadings, 160.

Incumbrances no defense, if they may be discharged by the purchase money, or if complainant may be able to make title at the time of the decree. *Hepburn* v. *Auld* *supra*; *Finley* v. *Lynch*, 2 Bibb (Ky.) 566; *Graham* v. *Huckwith*, 1 Marsh. (Ky.) 423; *Tyner* v. *Williams*, 3 Bibb., 366; *Seymour* v. *DeLance*, 3 Cow., 445; *Woodcock* v. *Bennett*, 1 Cow., 725, 733; Fonb. B. 1, ch. 3, sec. 9, p. 154, note (*i*); *Brashear* v. *Gratz*, 6 Wheat., 528. The exhibit cannot supply an averment. New. Pl. and Pr., 250.

The complainant was bound by the contract, and the defendant must be also, without the deposit. It was mutual *Turner* v. *Baker*, *ante*.

L. A. PINDALL, SP. J.:

On the 25th of February, 1874, the appellants, James W. Greenfield and Matilda Greenfield, his wife, of the one part, and the appellee, Charles H. Carlton, of the other part, entered into articles of agreement for the sale and purchase of a block of ground in Pine Bluff, owned by the appellant Greenfield, and occupied by appellants as a residence.

By the terms of this agreement, the appellants agreed and contracted to sell and convey the said block and the buildings and improvements thereon to the appellee, for the price and sum of $8,000, to be paid as follows:   One fourth to be paid in cash, or so soon as possession of the property was delivered, one fourth on or before the 1st April, 1875, one fourth 1st April, 1876, and one fourth 1st April, 1877, all deferred payments to bear eight per cent. interest from date until paid.   The parties of the first part agreeing and contracting upon the payment to the said Matilda Greenfield, by the 1st day of April, 1874, of the said sum of $2,000, and the execution by the said Carlton of his notes for the three deferred payments, that they would deliver up the possession of the premises to said Carlton and execute to him their deed to said property, reserving their mortgage lien for the deferred payments, and the said Carlton, "as an earnest of his undertaking, covenanted and agreed that he would, on or before the 15th March, 1874, deposit with a banking house in Pine Bluff, the sum of $1,000, to be held by said banking house for the use of said Matilda Greenfield, but not to be paid to her unless the terms of the said contract were complied with, and if the terms of said contract were not complied with by the 1st April, said sum of $1,000 was to be returned to said Carlton.

And the said parties of the first part agreed that they would make to said Carlton, upon the complying with the terms of

said contract, a full warranty title to said property, the said Carlton executing back to them, or to the said Matilda, a mortgage to secure the unpaid purchase money, and interest.

Appellants filed their complaint in equity to the October term, 1874, of the Jefferson Circuit Court, exhibiting said contract as part thereof, and alleging that said plaintiffs. had, at all times, since making said contract, been ready and willing to convey said premises to said Carlton, and had at several times since and before the 2d day of April, 1874, in a friendly manner, informed said Carlton of their readiness to make a proper deed, as stipulated, and to deliver to him the possession of said property, on the payment of said $2,000, and the execution of said notes, and requested the said Carlton to pay to said Matilda said sum and to execute said notes, and that they did, on the 1st day of April, 1874, or as immediately thereafter as they could, the said defendant (being at the time absent from the State) so specially inform him, and produced and tendered to him a proper deed of conveyance, properly executed with relinquishment of the dower of said Matilda, and that the said plaintiffs had at all times been ready and willing to execute and deliver the conveyance as specified, they bring the one tendered into court and offer to deliver it upon defendant's compliance with the terms of the contract, and further alleging that defendant refuses and has ever refused to perform the articles of agreement on his part.

And prays that the contract may be specially performed and carried into execution by the defendant.

At the return term of the summons, the defendant filed an answer to the complaint, in the same pleading reserving a demurrer thereto.

On the 30th August, 1875, the demurrer was taken up and argued, and, upon consideration, was sustained by the court, and plaintiffs appealed to this court.

There was a demurrer filed by complainants to the answer of defendant, but as this demurrer, or the sufficiency of said answer, was not considered or passed upon by the court below, the questions arising thereon are not before us on this appeal.

As a preliminary question, the counsel for appellants insists that the practice of answering the entire complaint, and reserving a demurrer to the same matter, in the same pleading, thereby tendering two issues, one of law and one of fact, is in violation of correct pleading, and cites *Davis* v. *Hines*, 6 Ohio Stat., 473; Myers' Codes, 364, and several cases from the New York books, which sustain the objection, but these cases are not authority with us.

It was the settled practice in this State in equity causes, before the adoption of the Code of Practice, to reserve questions of law to the final hearing of the cause in the answer, and to have the same advantages as upon demurrer interposed in due form. As an example, we may refer to *Hadley* v. *Sullivan*, 16 Ark., 141; and in *Meux* v. *Anthony*, 11 Ark., 423, it is said the practice is fully sustained.

Our Code of Practice, sec. 4588, Gantt's Digest, provides: " That a party may file a demurrer with his answer or reply," and in sec. 4590: "That when a party files a demurrer with his answer or reply, the demurrer must be presented for the consideration of the court, at or before the first calling of the cause for trial after the filing of the same; and, if he fails to do so, the demurrer shall be regarded as waived as to all points, except the jurisdiction of the court, and that the pleading demurred to does not state facts sufficient to constitute a cause of action, or defense, counter claim, or set off.

There is no such provision in the Codes of either New York (see *Slocum* v. *Wheeler*, 4 How. Pr. Rpts., 374), Ohio or Kentucky. Myers' Code, notes to sec. 124. The amendment to the

Kentucky Code of January 26th, 1866, only permits the demurrer to be filed with the answer, when the pleading is filed in vacation, and in that event requires that it shall be presented for the consideration of the court at the first term thereafter.

But the Legislature of our State, in adopting the Code system, saw proper to change the language of this amendment as given above.

We must suppose they had some object in thus changing it; at all events they have changed its language, and the natural import is to establish a different rule.

The demurrer, although filed with the answer, indeed embodied in it, is a separate pleading, must be taken up and considered separately, before the cause is called for trial on the issues of fact made by the answer or reply, as was done in this case.

The first ground of demurrer was that the deed exhibited with the complaint, was not such a deed as was contemplated in the contract, and therefore plaintiffs had never offered to comply with their part of the contract.

The complaint alleges that plaintiffs were at all times ready and willing to execute a proper deed of conveyance, such as is specified for, in said articles of agreement.

The deed appears to be in the ordinary form with the statutory covenants and relinquishment of dower, properly acknowledged, and, as no special objection to it is pointed out by the demurrer, and, as plaintiffs offered to make a proper deed, its provisions could have been settled by the court. We think there is nothing in the assignment. Williard's Eq. Jur., 293.

The second ground of demurrer was not well taken. If the complaint was not at the time verified, the defendant should have required it to be done by motion or rule. This defect was not ground for demurrer. Newman Prac. and Plea., 643–44.

For a third cause of demurrer, it was alleged that plaintiff's remedy at law is adequate and complete.

The fundamental principle upon which the jurisdiction of equity courts rests in all cases is the supposed inadequacy of the legal remedies to afford complete justice; but, in decreeing the specific execution of contracts, a broader jurisdiction has, to some extent, been exercised, and this relief has been granted in many cases where the legal remedies were concurrent.

It is said in Willard's Equity Jurisprudence, 261, "That every agreement made between parties capable of contracting, upon a lawful subject matter, and upon an adequate consideration, and which is not contrary to public policy, or against any positive statute, should, if possible, be performed. This is required no less by sound morals than by law." And Sir William Grant remarked, in *Hall* v. *Warren*, 9 Ves., that if the contract be entered into by a competent party, and be, in the nature and circumstances of it, unobjectionable, it is as much of course for a court of equity to decree a specific performance as it is to give damages at law. See, also, ib., 297, and *Hamilton* v. *Fowlkes*, 16 Ark., 340.

And in commenting upon this head of jurisdiction, Justice Story, 2 Eq. Jur., 714, says that by the common law no redress can be had except in damages. "Thus, in effect, in all cases allowing the party the election either to pay damages or to perform the contract or covenant at his sole pleasure. But courts of equity have deemed such a course wholly inadequate for the purposes of justice, and considering it a violation of moral and equitable duties, they have not hesitated to interpose and require from the conscience of the offending party a strict performance of what he cannot, without manifest wrong or fraud, refuse."

And in the late work of Bispham on the principles of equity, 340, it is said: "Where a binding agreement is entered into to sell lands, equity regards the vendor as a trustee of the legal title for the benefit of the vendee, while the latter is looked upon as

a trustee of the purchase money for the benefit of the former. Hence a purchaser has a right to the aid of the chancellor for the purpose of obtaining a conveyance of the legal title to the property of which he is the equitable owner, while, as all remedies ought to be mutual, the vendor can invoke the same aid for the purpose of compelling the buyer to accept a conveyance and pay the purchase money. If the contract has been partially performed, the equity of both parties is, of course, stronger." See, also, Will. Eq. Jur., 298–99.

While equity courts undoubtedly act upon the above principles, we do not mean to say such courts will, under all circumstances, specifically enforce an agreement for the conveyance of land where the remedy at law for damages is adeqate. The jurisdiction, to some extent, must depend upon the circumstances of each particular case.

In 2 Sto. Eq. Jur., 742, it is said : " In truth, the exercise of this whole branch of equity jurisprudence respecting the rescission and specific performance of contracts, is not a matter of right in either party, but is a matter of discretion in the court, not, indeed, of arbitrary or capricious discretion, dependent upon the mere pleasure of the judge, but of that sound and reasonable discretion, which governs itself as far as it may by general rules and principles, but, at the same time, withholds or grants relief according to the circumstances of each particular case, when these rules and principles will not furnish an exact measure of justice between the parties."

" It is a discretion which is, to a considerable extent, controlled by the circumstances of the individual case." Adams' Eq., 185, n, and authorities cited.

And, too, " There is a settled distinction between the case of a vendor coming into a court of equity to compel a vendee to performance, and of a vendee resorting to equity to compel a vendor to perform." Adams' Eq., 206, n 1; Will. Eq. Jur., 286.

" We have already seen that the specific execution of a contract in equity is a matter not of absolute right in the party, but of sound discretion in the court. Hence it requires a much less strength of case on the part of the defendant to resist a bill to perform a contract than it does on the part of the plaintiff to maintain a bill to enforce a specific performance. When a court simply refuses to enforce the specific performance of a contract, it leaves the party to his remedy at law." 2 Story Eq. Jur., 769.

Courts of chancery have adopted and prescribed certain rules by which they are usually governed in exercising the jurisdiction of enforcing specific performance of agreements for the sale of lands, some of which were stated by this court in *Shields* v. *Trammell*, 19 Ark., 59.

· *First*—That there must be a valuable consideration in favor of the party against whom the agreement is to be enforced.

*Second*—That the contract must be one which the defendant can fulfill, and the fulfillment of which on his part and on the part of the plaintiff can be judicially enforced.

*Third*—That the enforcement of the contract *in specie* must be really important to the plaintiff and not oppressive to the defendant.

For a more extended presentation of these rules, and fuller citation of the authorities, see Adams' Equity, p. 183, *n* 1.

There may be circumstances connected with a contract which would authorize a court to decline a specific performance, and remit the party to his damages. But we think there are no such circumstances apparent on the face of this complaint. If there be any such they must be brought to the attention of the court in the answer.

It is suggested that the obligation in the contract, by which appellee agreed to deposit $1000 with the banking house " as an earnest of his undertaking," might be regarded as a penalty, or

as stipulated damages, and that a court of equity would not de-cree a specific performance under such circumstances.

Upon this question Mr. Fry, in his work on specific perform-ance, page 46, lays the rule down in these words: " The ques-tion always is, what is the agreement? Is it that one certain thing shall be done, with a penalty added to secure performance? or is it that one of two things shall be done, namely, the per-formance of the act or the payment of a sum of money? If the former, the fact of a penalty being annexed will not prevent equity from enforcing the performance.   *   *   *   If the latter, the contract is satisfied by the payment of a sum of money, and there is no ground for equitable proceedings."

Upon the face of the contract, we think this falls within the first class, as distinguished by Mr. Fry. The appellee did not deposit the money as he agreed to do, and we cannot comprehend how a mere promise could become a liquidation of damages, or excuse a compliance with a valid and binding agreement. Pen-alties and forfeitures are not favored in chancery courts. Equity looks rather at the intention of the parties, the real object; and, if practicable, executes this.

The fourth ground of demurrer, as alleged, was, that the said complaint in no way avers the ability of defendant to perform said contract.

It is not necessary that the complaint should contain such an averment. It is sufficient if the complaint contains the fact and circumstances constituting complainant's cause of action. If the defendants had entered into a contract he was not able at the time to execute, or if the circumstances of the contract had subse-quently become so changed that defendant was unable to execute it, under circumstances that would excuse a performance such facts and circumstances would be mere matter of defense, and must be presented in the answer. Section 4569, Gantt's Digest.

The fifth ground of demurrer was, that the complaint did not state facts sufficient to constitute a cause of action, and was without equity on its face.

The complaint formally alleged the execution of a binding agreement for the conveyance of land for a sufficient consideration, the parties were competent to contract, the subject matter lawful, the terms certainly apparently fair, mutual and practicable; alleged that appellants were able to execute it; had offered to do so; that defendant had refused to comply with his agreement.

We think upon general demurrer the case was sufficient. The decree is therefore reversed and the cause remanded to the Circuit Court, with instructions to overrule the demurrer and to proceed with the cause in accordance with law, and not inconsistent with this opinion.

Mr. Justice HARRISON did not sit in this case.