RAYMOND v. SAN GABRIEL VAL. LAND & WATER CO.

(Circuit Court of Appeals, Eighth Circuit. January 27, 1893.)

No. 101.

1. VENDOR AND VENDEE—SPECIFIC PERFORMANCE.

A vendor of real estate may recover the purchase money by a suit in equity for specific performance in every case where the vendee would have the right by such a suit to compel the execution and delivery of a deed by the vendor.

2. CONTRACTS—TIME OF THE ESSENCE.

A stipulation in a contract for a sale of real estate that time is of the essence of the agreement, and that, if default be made in the payment of any installment of the price, the whole price shall immediately become payable, or the vendor may cancel the contract and re-enter upon the land, is construed by the law of California as intended for the benefit of the vendor alone, who, if he promptly waives the stipulation, and demands payment of the installment, and thereafter tenders a deed and demands the purchase money, is entitled to the specific performance of the contract. Wilcoxson v. Stitt, (Cal.) 4 Pac. Rep. 629; Smith v. Mohn, (Cal.) 25 Pac. Rep. 696; and Newton v. Hull, (Cal.) 27 Pac. Rep. 429,— followed.

3. SAME—FRAUDULENT REPRESENTATIONS BY A LAND COMPANY.

A person who subscribes for a large number of shares of a land company, and is an active director and the superintendent and manager thereof, and who, while acting as such, purchases lots from the company at a price fixed by a resolution of the board of directors, which he seconded and voted for, and receives commissions for selling lots, (including those purchased by himself,) cannot rescind the contract on the ground of fraudulent representations in certain newspaper articles, prepared by him and others interested in the company, particularly when such articles, though written in a style commonly used in "booming" towns, contain no misrepresentation of material facts.

Appeal from the Circuit Court of the United States for the District of Kansas.

In Equity. Bill by the San Gabriel Valley Land & Water Company against F. L. Raymond for the specific performance of a contract of

sale of real property. Decree for complainant.          Respondent appeals. Affirmed.

Statement by CALDWELL, Circuit Judge:

This suit is founded on nine contracts for the purchase of town lots. The contracts are alike in every respect save as to the number of the lots and the prices to be paid therefor.   The following is a copy of one of the contracts:

"This agreement, made on the 29th day of June, 1887, between the San Gabriel Valley Land and Water Co., a corporation, duly organized under the laws of the state of California, the party of the first part, and F. L. Raymond, the party of the second part, witnesseth that the said party of the first part, in consideration of the covenants and agreements on the part of the party of the second part hereinafter contained, hereby agrees to sell and convey to the party of the second part, and the said party of the second part agrees to purchase, that certain lot in the San Gabriel Valley Land and Water Co.'s subdivisions of the East San Gabriel tract of land in the county of Los Angeles, state of California, described as 'lot nine, block one hundred and thirteen,' according to the map of said subdivisions filed in the office of the county recorder on the 12th day of August, 1887, and recorded in Book 21 of Miscellaneous Records, Los Angeles county, page 79, for the sum of two hundred dollars, to be paid as hereinafter stated. And the said party of the second part agrees to purchase said lands, and pay therefor the sum of two hundred dollars, as follows:   Sixty-seven dollars to be paid on the execution of this agreement, the receipt whereof the party of the first part hereby acknowledges, and the remaining one hundred and thirty-three ($133.00) dollars, with interest at the rate of eight per cent. per annum from the date hereof, at the times and in the manner following:   Sixty-seven dollars, with interest from this date, at the rate aforesaid, on or before the 29th day of June, 1888; sixty-six dollars, with interest as aforesaid from this date, on or before the 29th day of June, 1889.   And the said party reserves the right to lay pipes in said land to conduct water through said land whenever the grantors may desire to conduct the same.

"The party of the second part shall have the immediate possession of said tract herein agreed to be conveyed, and in consideration of such possession, use, and occupation, the said party of the second part agrees to pay all taxes which may be assessed against the land after the present year; and the said party of the second part agrees to care for all trees that may be planted on streets and avenues fronting on said tract sold.

"Time is the essence of this agreement, and, if default be made in the payment of any installment of principal or interest when due, then the whole of the principal and interest shall become immediately due and payable, or this contract may, at the option of the party of the first part, be canceled, and said company shall have the right to re-enter upon said premises, and every part; and all payments which have been made under this agreement shall be retained by the party of the first part. And if the party of the first part shall elect to cancel this agreement for default of payment, as above provided, notice of such election shall be equivalent to re-entry, and the interests of the party of the second part in said land, and all right of possession of the same, shall cease. And the party of the first part agrees that upon full payment being made as herein provided, it will make, execute, and deliver to the party of the second part a deed of grant for conveying the title to the above-described premises to the said party of the second part.

"The provisions of this agreement shall apply to and bind the heirs, assigns, and successors of the parties hereto.

"In witness whereof, the said party of the first part has caused its name to be hereunto subscribed and its seal affixed by its president and secretary, they being duly authorized by resolution of its board of directors; and the party of the second part has hereunto set his hand, the day and year first above written.

[Seal.]                              "San Gabriel Valley Land and Water Co.
                                      "By H. H. Markham, President.
                                      "By A. L. Burbank, Secretary.
                                  "F. L. Raymond, Purchaser.          [Seal.]"

The purchaser, Raymond, made default in the payment of the second and third installments of the purchase money. The vendor waived his right to cancel the contracts on account of the nonpayment of the purchase money, and demanded payment thereof; and on the 9th day of December, 1889, tendered to the appellant, at his home in the state of Kansas, a good and sufficient deed for the lots, and thereupon brought this suit to compel him to specifically perform the contracts by paying the purchase money, and praying for a decree accordingly. The defendant demurred to the bill for want of equity, and filed an answer alleging the contracts were procured by fraud and misrepresentation; that complainant could not make a good title to the lots, and was guilty of laches in not sooner bringing its suit. The lower court rendered a decree for the purchase money, and the defendant appealed. ,

W. P. Douthitt, Howell Jones, and Rankin Mason, for appellant.

R. W. Blair, for appellee.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

CALDWELL, Circuit Judge, (after stating the facts.) **1.** A vendor of real estate, who has executed a title bond conditioned for the conveyance of the land upon the payment of the price, has an election of remedies to recover the purchase money. He may sue therefor at law, or he may resort to equity for a specific performance of the contract by the vendee. Whenever the purchaser has the right to go into equity and compel the execution and delivery of a deed, the principle of mutuality gives the vendor the right to go into equity to compel the vendee to perform the contract on his part by paying the purchase money. This is an exception to the general rule that equity will decline jurisdiction of a suit for a money demand which could be recovered by an action at law. The exception is based on the established doctrine of equity that the right to a specific performance must be mutual, and that it must be enjoyed alike by both parties to every contract to which the jurisdiction extends. In every case, therefore, where the vendee would have the right, by a suit in equity, to compel the execution and delivery of the deed by the vendor, the latter may, by a similar suit, enforce the obligation of the vendee to pay the purchase money. Pom. Cont. §§ 6, 165; Cathcart v. Robinson, 5 Pet. 264, 278; Railroad Corp. v. Evans, 6 Gray, 25; Hopper v. Hopper, 16 N. J. Eq. 147; Springs v. Sanders, 1 Phil. Eq. 67; Crary v. Smith, 2 N. Y. 60; Fry, Spec. Perf. § 23; Greenfield v. Carlton, 30 Ark. 547.

**2.** Does the clause in the contract that "time is the essence of this agreement" preclude the plaintiff from obtaining the relief sought, because it did not tender a deed and demand payment on the day the purchase money was due, nor for several months thereafter? The answer to this question depends upon the construction of the contract. The contract relates to the sale of land situated in the state of California, and was made and to be performed there, and its meaning and operation must, therefore, be determined by the law of that state. Contracts containing provisions similar in language, and identical in their legal effect, with the provisions in the contract in suit, have been construed by the supreme court of that state in several cases, and the ruling has been uniform, save in one case, which in terms has been overruled, that stipulations

that time is the essence of a contract, or that the contract shall be void if the purchase money is not paid on the day it is due, are applicable only to the agreement on the part of the vendee to pay the purchase money, and are intended alone for the benefit of the vendor, who may insist upon them or waive them, at his election; and when he waives them he may recover the purchase money at any time after tendering the deed. Wilcoxson v. Stitt, 65 Cal. 596, 4 Pac. Rep. 629; Vorwerk v. Nolte, 87 Cal. 236, 25 Pac. Rep. 412; Smith v. Mohn, 87 Cal. 489, 498, 25 Pac. Rep. 696; Newton v. Hull, 90 Cal. 487, 491, 27 Pac. Rep. 429; Banbury v. Arnold, 91 Cal. 606, 27 Pac. Rep. 934.

In the case of Smith v. Mohn, supra, the provision of the agreement was:

"It is further agreed that time is of the essence of this contract, and, in the event of a failure to comply with the terms hereof by said party of the second part, the said party of the first part shall be released from all obligations in law or equity to convey said property, and said party of the second part shall forfeit all right thereto; and to moneys theretofore paid under this contract, and all his interest in or to said moneys or said property shall thereupon immediately cease as fully as if said moneys had never been paid on this agreement entered into."

The agreement contained a provision, like the one in the contract in suit, that upon the payment of the purchase money "at the time and in the manner" required by the terms of the agreement the vendor would execute and deliver a deed to the vendee for the land. Construing this agreement, the court said:

"In this there is no provision that the plaintiff shall forfeit his right if the money is not paid on time; and in Wilcoxson v. Stitt, 65 Cal. 592, 4 Pac. Rep. 629, where a similar contract was under review, it was held that the failure of the vendee to make the payments provided for did not make the contract void, so far as the vendor was concerned, but that he had the option to avoid or enforce the contract, and might, if he elected to do so, sue for and recover the balance of the purchase money. That case seems to be decisive of this case. * * *"

In the case of Newton v. Hull, supra, the court said:

"It is contended for appellant that, because it does not appear that plaintiff tendered to defendants a deed of the land on the 1st day of November, 1888, when the third and last installment of the purchase money became due, she was in default equally with the defendants; that, 'time being of the essence of the contract,' the deed must have been tendered 'at the time agreed upon, and at no other time;' and that by the mutual default of both parties 'the contract came to an end, and cannot be enforced by either party.' To maintain this position, counsel rely principally upon the case of Cleary v. Folger, 84 Cal. 316, 24 Pac. Rep. 280; but I think the opinion of the commissioners in that case, (in which I concurred,) in so far as it sustains the point made here by appellant's counsel, is out of line with the otherwise uninterrupted current of authority in this state. * * *"

Continuing, the court said:

"But the stipulation that time is of the essence of the contract seems to be applicable only to the agreement on the part of the defendants to pay the purchase money, and to be intended for the benefit of the plaintiff alone. Wilcoxson v. Stitt, 65 Cal. 596, 4 Pac. Rep. 629, and cases there cited; Vorwerk v. Nolte, 87 Cal. 236, 25 Pac. Rep. 412; Smith v. Mohn, 87 Cal. 489, 25 Pac. Rep. 696. It is true that the plaintiff was not obliged to accept payment and convey the land at any time after the defendants had failed to pay the second

installment at the time it became due, (May 1, 1888,) and at any time thereafter she might have elected to rescind the agreement, (Grey v. Tubbs, 43 Cal. 359;) but, as above remarked, it does not follow that the defendants could work a rescission of the agreement, or avoid their obligation to pay the purchase money, by simply refusing to pay it, or by delaying payment thereof until after it became due. There is no provision in the agreement that the plaintiff should forfeit her right to the purchase money in case the defendants should fail to pay it on or before the day on which it became due, nor in case she failed to tender a deed on that day, or at any time before the defendants tendered payment of the purchase money. Nor was she bound to tender a deed, except upon tender of payment of the purchase money. Smith v. Mohn, and Wilcoxson v. Stitt, supra. As we have seen, she could not be put in default, even after the purchase money was overdue, except by her refusal to convey upon tender of the purchase money."

These decisions of the supreme court of California are of controlling authority on this question, in this case. The facts of this case bring it within the doctrine of the cases cited.

When the first installment of the purchase money matured,—June 29, 1888,—and was not paid, the plaintiff at once waived the stipulation making time the essence of the contract, and giving it the right to cancel the same, and promptly demanded payment of the matured installment by letter, which was received by the defendant in due course of mail; and on the 9th day of December, 1889,—five months after the maturity of the last installment,—the plaintiff tendered a deed to the defendant for the lots, and demanded the purchase money. The plaintiff's waiver was prompt and absolute. It did not play fast and loose. It has constantly treated the contract as in force, and demanded the payment of the purchase money. By the laws of California, as established by the decisions of its supreme court, the plaintiff, after such waiver, could not be put in default except by its refusal to convey the lots upon a tender of the purchase money. After the waiver, time ceased to be of the essence of the contract, and the general rule is that, when time is not essential, and the stipulations of the contract are mutually dependent, and neither the vendor nor the vendee tenders performance, the contract will continue to subsist, and may be specifically enforced by either party, until it is barred by the statute of limitations, unless some special circumstance has intervened which would make it inequitable to do so. Leaird v. Smith, 44 N. Y. 618; Van Campen v. Knight, 63 Barb. 205; Crabtree v. Levings, 53 Ill. 526; Mather v. Scoles, 35 Ind. 1. No such circumstance has intervened in this case.

The California decisions gave the benefit of this rule to the vendor who has waived the stipulation making time essential. Whether the waiver, when once made, can be withdrawn, and whether the rights of the vendor and vendee to a specific performance after the waiver are not mutual, are questions which do not arise in this case. It is also a general rule that a defendant, in order to avail himself of the plaintiff's laches as a defense to a suit for specific performance, must show that he was himself "ready, desirous, prompt, and eager" to perform the contract on his own part. Pom. Cont. §§ 403, 404.

3. The defense that the contract was procured by fraudulent representations and promises finds no support in the evidence. The San Gabriel Valley Land & Water Company was incorporated under the

laws of the state of California on the 18th day of May, 1887. The purposes for which it was formed were declared by its charter to be "to acquire, manage, improve, subdivide, and sell or otherwise dispose of real property in the San Gabriel Valley and in Pasadena, the San Pasqual and Santa Anita ranches, and in the vicinity of said ranches and valley in Los Angeles county; to acquire water rights, develop waters, construct, purchase, or otherwise acquire waterworks; to divert waters, conduct the same to the land of the company, and in all lawful ways to deal in lands and water, acquire and dispose of the same in the said valley and ranches and vicinity." The capital stock was divided into 16,000 shares of the par value of $100. The defendant was one of the original corporators, and subscribed for 3,200 shares of the capital stock, most of which he held in trust for others. He was also an active director in the company, and its superintendent and general manager, and as such had the charge and direction of laying out the town site and grading the streets. He sustained these relations to the company at the time he purchased the lots. As a director he seconded and voted for a resolution of the board of directors, which was adopted, fixing the prices for the town lots; and the lots which he purchased were purchased at the prices fixed by the resolution. He received commissions for selling lots, and was paid commissions on the lots purchased by himself. He was one of the most active promoters of the enterprise. While he was a director, and actively engaged in managing the affairs of the company, and about the time he purchased his lots, articles were published in two newspapers, giving a flattering account of the town and its future prospects. These articles were written by the newspaper reporters, who were assisted in their preparation by the defendant and others interested in the town, and appeared in the newspaper as editorials, but were paid for as advertisements. They were written in that free and florid style in common use in advertising and "booming" new towns. They stated, among other things, that the company contemplated making certain improvements in the town, such as the erection of an hotel, grading streets, establishing street-car lines, and the like; and the defendant alleges that he purchased the lots relying upon the truth of these representations, and that the promised improvements have not been made.

The responsibility of the company for the statements and prophecies contained in these articles is not shown. They certainly did not constitute any part of the contract between the parties, nor did they induce the defendant to enter into the contract. He knew as much or more than any one else about the town and what the company contemplated doing in the way of improvements. Whoever else may have been deceived by these articles, it is certain the defendant was not; but it is due to him and others who assisted in their preparation to say it does not appear that they contained any misrepresentations of material facts. With reference to the improvements, which it was said the company contemplated making in the future, the evidence shows that $115,000 was expended by the company in making such improvements, among which was an hotel building costing $40,000 or $50,000, and a schoolhouse costing $10,000. This was quite enough to

satisfy the general and indefinite language of the newspaper articles, and more, probably, than most people would have expected. It is apparent that the defendant and his associates formed the plaintiff corporation for the purpose of honest and legitimate speculation in real estate. In futherance of their scheme they acquired the land and laid out the townsite in question. It was not intended to be a mere paper town, nor did the promoters of the enterprise intend to cheat or deceive anybody in the sale of the lots therein. It is obvious they had the utmost faith in the future growth and prosperity of the town, and that the lots they were selling were really worth the prices for which they were sold. The defendant at one time could have sold the lots he purchased at a considerable advance. But there came a period of depression in the business of selling lots in this town. The decline in the prices of the lots was not the result of any fault of the company, but resulted from causes beyond its control, and was probably due to the same general causes which produce fluctuations in the prices of lots in other towns of like character. It became apparent that those who had bought lots at the prices that ruled before the depression set in would sustain a loss on their investments unless there was a reaction in prices, of which there was no immediate prospect. In this condition of affairs the defendant abandoned the town, and left the state, and, it is evident, was anxious to get rid of his purchase. His former associates, or some of them, remained to meet and carry out the obligations of the company and continue its business. The company is still a going concern, and apparently has faith that the town will in the end prove to be all its founders predicted for it in the beginning, and that at most the only mistake made was in fixing the era of its prosperous growth a little too early in its history. Whether this hope is well founded or not, the defendant has no equity to be relieved from paying for lots purchased at prices which he himself assisted in fixing, and casting the burden of their depreciation in value, if any, upon the company of which he was a charter member, and which owes duties and obligations to lot owners and its stockholders, which it appears to be discharging in good faith to the extent of its ability. The decree of the court below is affirmed.