## DILLON v. RINGLEMAN.

No. 6160. Opinion Filed February 8, 1916.

(155 Pac. 563.)

1. **SPECIFIC PERFORMANCE—Enforcement of Land Sale Contract—Action by Vendor.** Specific performance will lie at the instance of the vendor to enforce a contract for the purchase of land, where he alleges and makes tender of a valid deed therefor, since the decree will compel the acceptance of the deed as well as the payment of money.

2. **DAMAGES—Construction—Penalty—Option.** Where the performance of a thing is secured by a penalty, the doing of the thing, and not the payment of the penalty, is considered the substance

of the transaction. The parties may, however, if they choose, stipulate that the obligor shall have the option either to do the thing or pay the penalty; but, as such a provision always gives one party a clear advantage over the other, such a construction is not given unless it is clear, from the face of the instrument, that such was the intention of the parties.

3.   **CONTRACTS—Breach—Liquidated Damages — Defense — Proof.** In all cases where a party relies on the payment of liquidated damages as a discharge, it must clearly appear that they were to be paid and received absolutely in lieu of performance.

4.   **DAMAGES—Forfeitures—Statutes.** The statutes of Oklahoma expressly prohibit forfeitures except where it would be impracticable or extremely difficult to fix the actual damages.

5.   **SPECIFIC PERFORMANCE—Land Sale Contract—Construction —Alternative Nature.** Contract examined, and **held** not to be an alternative contract.

6.   **SAME—Contract—Construction—Time as of Essence.** Time is never considered as of the essence of a contract, unless by its terms expressly so provided.

7.   **SAME.** Contract examined, and **held** that time was not of the essence thereof.

(Syllabus by Mathews, C.)

*Error from District Court, Blaine County;*
*James R. Tolbert, Judge.*

Action by Susie R. Ringleman against John H. Dillon. Judgment for plaintiff, and defendant brings error. Affirmed.

*J. P. Wishard, Seymour Foose,* and *R. C. Brown,* for plaintiff in error.

*C. F. Dyer,* for defendant in error.

Opinion by MATHEWS, C.   The parties will be designated as in the trial court. This is an action for specific performance instituted by a vendor against the vendee.

As a preliminary to this action, the parties hereto executed the following contract:

"This contract, made and entered into this 1st day of February, 1911, by and between Susie R. Ringleman, party of the first part, and John H. Dillon, party of the second part, witnesseth, that the said party of the first part has this day sold to the said party of the second, part the following described real estate, to wit: The east one-half of the southeast quarter (E. ½ of S. E. ¼) of section twenty-four (24), township fourteen (14), range eleven (11) W. I. M., containing eighty acres, upon the following terms:

"Five hundred dollars cash in hand, the receipt of which is hereby acknowledged. This five hundred dollars to be forfeited as liquidated damages if the second party fails to comply with this contract.

"Said second party is to assume and pay the first mortgage of $1,800.00, payable to Prudential Life Insurance Company, and due about February 1, 1918, drawing interest at 8 per cent. per annum, with interest payable semi-annually.

"The said second party is to pay the remainder of the purchase price, being twenty-seven hundred dollars ($2,-700.00) on January 1, 1912.

"It is agreed between the parties that the said second party is to have possession on January 1, 1912, at the time that the last payment is made on the place, but in case there is some vacant oat or wheat ground on the place prior to that time and after July 1, 1911, the first party may have the privilege of working it if he can do so.

"The said first party is to pay the taxes for the year 1911, and is to pay the interest on the said $1,800.00 loan till the 1st of January, 1912, and to furnish abstract showing good and sufficient title, clear of all liens except the said $1,800.00 mortgage.

"A copy of this contract, together with a warranty deed signed by the said Susie R. Ringleman and Frederick Ringleman is to be placed in escrow in the American State Bank, to be held by them till January 1, 1912, and

the said bank is hereby instructed to hold said papers till that time and to then deliver the said deed to John H. Dillon or his authorized agent upon the payment into the said bank of the said $2,700.00 to the credit of the said Susie R. Ringleman or her authorized agent, but the said money shall not be paid into the bank until the conditions of this contract have been complied with.

"In witness whereof, the said parties have this 1st day of February, 1911, signed and acknowledged this contract in triplicate.

"SUSIE R. RINGLEMAN,
"*Party of the First Part.*

"JOHN H. DILLON,
"*Party of the Second Part.*"

The terms of the contract were not completed, each attributing the cause of the failure to the other. On the 9th day of September, 1912, plaintiff, the vendor, filed her action against the defendant, wherein she charged that the defendant had failed and refused to perform said contract, except that he had paid the said $500 thereon. She alleged that she had fully complied with all the terms of said contract incumbent upon her. Plaintiff tendered a deed to the property into court, and prayed for specific performance of said contract, and asked that she have judgment against defendant for $4,710, being the amount due on said contract, and that defendant be adjudged and required to accept said deed.

Defendant filed a general demurrer to this petition, which was overruled, and exceptions saved. Defendant then answered by general denial and pleaded: (1) That by agreement of the contracting parties, the sum of $500 was the fixed measure of damages in case defendant failed to comply with said contract, and that in case of proof of

failure on the part of defendant to comply with said contract plaintiff could recover only the sum which had been deposited as liquidated damages; (2) that the contract was not mutual, because the land mentioned therein was plaintiff's homestead, she residing thereon with her husband and family, and that her said husband had not joined in the execution of said contract; (3) that plaintiff had failed to comply with the terms of the contract on her part, in that she failed to deliver to him a deed to said property, and also failed to deliver to him an abstract to said property showing a good and sufficient title in herself, clear of all liens. Defendant further asked for judgment against plaintiff for the said $500 paid to her upon her contract.

Plaintiff's reply was in effect a general denial. Upon the trial the court found for the plaintiff and entered the following decree:

"It is therefore by the court ordered, considered, adjudged, and decreed that the defendant, John H. Dillon, be and hereby is required to accept the deed of conveyance for the following described land, to wit, east one-half of the southeast quarter of section 24, township 14, range 11 W. I. M., Blaine county, Okla., said deed having been executed by the plaintiff and her husband, Fred Ringleman, on the 1st day of February, 1911. And it is further ordered, adjudged, and decreed that the said defendant, John H. Dillon, pay to the plaintiff herein the sum of $2,700, with interest thereon at the rate of 6 per cent. from the 1st day of January, 1912.    *    *    *

"It is further ordered that the defendant, John H. Dillon, shall comply with this judgment within 15 days from the date hereof, and that the deed, introduced in evidence in the case as 'Exhibit B,' shall be by the clerk of this court held for the use and benefit of the defendant and delivered to said defendant upon the payment into

court for the use and benefit of the plaintiff of the sum of moneys herein adjudged to be paid.

"The court finds from the facts introduced in said cause that the value of the land in controversy was agreed to be the sum of $5,000.

"It is therefore ordered, adjudged, and decreed that the sums herein ordered to be paid by the defendant shall have the same force and effect as a judgment, and, if the same are not paid according to the order herein made, the plaintiff shall have execution order of court or other process to collect the same. The defendant to pay the costs of this action.                    JAMES R. TOLBERT, *Judge.*"

The motion for a new trial being overruled, the defendant prosecutes this appeal.

The first question for solution is: Can a vendor enforce in a court of equity the specific performance of a contract for the sale of land?

Such actions upon the part of the vendee to enforce specific performance against the vendor are very common, but, as far as our investigation has led us, we have been unable to find where our own court has passed upon the exact question here presented, but we find that the courts of other jurisdictions have quite uniformly held that the remedy is mutual, and that wherever it is available to the vendee it is also available to the vendor.

In the case of *Johnston v. Wadsworth*, 24. Or. 494, 34 Pac. 13, we find the following:

"Specific performance will lie at the instance of the vendor to enforce a contract for the purchase of land, where he alleges and makes tender of a deed therefor, since the decree will compel the acceptance of the deed as well as the payment of money."

To the same effect is the case of *Raymond v. San Gabriel Val. Land & Water Co.*, 53 Fed. 883, 4 C. C. A. 89:

"A vendor of real estate, who has executed a title bond conditioned for the conveyance of the land upon the payment of the price, has an election of remedies to recover the purchase money. He may sue therefor at law or he may resort to equity for a specific performance of the contract by the vendee. Whenever the purchaser has the right to go into equity and compel the execution and delivery of a deed, the principle of mutuality gives the vendor the right to go into equity to compel the vendee to perform the contract on his part by paying the purchase money. This. is an exception to the general rule that equity will decline jurisdiction of a suit for a money demand which could be recovered by an action at law. The exception is based on the established doctrine of equity that the right to a specific performance must be mutual, and that it must be enjoyed alike by both parties to every contract to which the jurisdiction extends. In every case, therefore, where the vendee would have the right, by a suit in equity, to compel the execution and delivery of the deed by the vendor, the latter may, by a similar suit, enforce the obligation of the vendee to pay the purchase money. Pom. Cont. secs. 6, 165; *Cathcart v. Robinson*, 5 Pet. 264, 278 [8 L. Ed. 120]; *Railroad Corp. v. Evans* [72 Mass.] 6 Gray, 25 [66 Am. Dec. 394]; *Hopper v. Hopper*, 16 N. J. Eq. 147; *Springs v. Sanders*, 62 N. C. 67; *Crary v. Smith*, 2 N. Y. 60; Fry, Spec. Perf. sec. 23; *Greenfield v. Carlton*, 30 Ark. 547."

"It is well established that, where a vendee may maintain a suit in equity for specific performance of an agreement of sale of lands, the vendor may maintain a bill for the specific performance of the vendee's agreement to pay the purchase money. 'The right of a vendor to come into a court of equity to enforce a specific performance is unquestionable. Such subjects are within the settled and common jurisdiction of the court.' Mr. Chief Justice Marshall, in *Cathcart v. Robinson*, 5 Pet. 264, 8 L. Ed. 120. See, also, *Raymond v. San Gabriel, etc., Co.*, 53 Fed. 883,

4 C. C. A. 89; *McCullough v. Sutherland* (C. C.) 153 Fed. 418. 'The granting of the equitable remedy of specific performance is, in the language ordinarily used, a matter of discretion, not an arbitrary, capricious discretion, but of a sound, judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case. . Where, however, the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach.' Pomeroy's Equity, sec. 1404." *(Donahoe v. Franks* [D. C.] 199 Fed. 267.)

"The only remaining question is as to plaintiffs' right to enforce the contract by specific performance. The rule seems to be well supported by authority, and founded in sound principle, that equity will enforce such contracts as well against the vendee as the vendor. In *Hogan v. Kyle,* 7 Wash. 595, 35 Pac. 399, 38 Am. St. Rep. 910, this rule was approved, and it was said: 'In fact, the prevailing modern authority is that, in a case of this kind, the vendor can either sue at law for damages, or resort to equity for specific performance.' This right is based upon mutuality in the contract. Warvelle on Vendors thus states the principle: 'A suit in equity against the vendee to compel a specific execution of a contract of sale, while in effect an action for the purchase money, has nevertheless always been sustained as a part of the appropriate and acknowledged jurisdiction of such court, although the vendor has, in most cases, another remedy by an action at law upon the agreement.' Warv. Vend. pp. 779, 780, and cases cited. See, also, Pom. Cont. (2d Ed.) p. 6." *(Anderson v. Wallace Lumber & Mfg. Co.,* 30 Wash. 147, 70 Pac. 247.)

"The written agreement for the sale and transfer of the real estate involved is definite and complete, and there can be no doubt that upon compliance with its terms ap-

pellant might have compelled appellee to execute a conveyance in accordance with the agreement. The equitable doctrine is that the enforcement of contracts must be mutual, and, the vendee being entitled to specific performance, his vendor must likewise be permitted in equity to compel the acceptance of his deed and the payment of the stipulated consideration. This remedy. is available, although the vendor may have an action at law for the purchase money. *Porter v. Travis,* 40 Ind. 556, 561; *Goodwine v. Morey,* 111 Ind. 68, 12 N. E. 82; 26 Am. & Eng. Ency. Law, 106, and cases cited." *(Migatz v. Sieglitz,* 166 Ind. 361, 77 N. E. 401.)

"It appears to be well established that a vendor may maintain a suit for a specific performance in all cases where the vendee can sue for a specific performance; that the remedy is mutual, upon the doctrine of courts of equity, that the vendor is a trustee for the purchaser as to the land, and the vendee a trustee for the vendor as to the purchase money. Suits of this kind by a vendor are, however, not frequent, especially where notes for the purchase money have been given, and where the remedy at law would seem to be complete, except so far as the plaintiff desires to enforce a vendor's lien against the estate sold. It is said by Mr. Fry, in his treatise on this subject, in explanation of suits by a vendor for a specific performance where his remedy at law is complete, that it will be apparent that damages will not place the vendor in the same situation as if the contract had been performed, for then (that is, if the contract had been performed) he would have got rid of the land and all the liabilities attaching to it, and would have the net purchase money in his pocket; whereas, after an action at law he still has the land and in addition damages, representing, in the opinion of a jury, the difference between the stipulated price and the price which it would probably fetch if resold, together with incidental expenses and any special damage which he may have suffered. Section 23." *(Paris v. Haley,* 61 Mo. 457.)

"There can be no question under the authorities that specific performance of such a contract may. be awarded at the suit of the vendor, and *Freeman v. Paulson* should not be construed as holding to the contrary. In fact, the vendor has an election of several remedies. He may sue for damages for a breach by the vendee, foreclose his equitable lien, or, by tendering a proper conveyance, have specific performance; that is, a judgment for the recovery of the purchase price. See concurring opinion of the Chief Justice in *Freeman v. Paulson, supra;* 6 Pomeroy, Eq. Jur. (1905 Ed.) 745; 26 Am. & Eng. Enc. of Law (2d Ed.)· 106; *Williams v. Langevin,* 40 Minn. 180, 41 N. W. 936; *Fairchild v. Marshall,* 42 Minn. 14, 43 N. W. 563; *Abbott v. Moldestad,* 74 Minn. 293, 77 N. W. 227, 73 Am. St. Rep. 348." ·*(O. W. Kerr Co. v. Nygren,* 114 Minn. 268, 130 N. W. 1112, Ann. Cas. 1912C, 538; *Nelson v. Husted et al.* [C. C.] 182 Fed. 921.)

Following the above-cited cases, we are of the opinion that the action of the trial court was proper in holding that, sitting as a court of equity, it had jurisdiction to fully determine the matter presented to it and the power to grant the relief prayed for.

The defendant claims that, as the contract fixed a certain definite sum to be paid as liquidated damages in case of a failure ·to perform the contract, specific performance should not be decreed. The contract entered into between the parties states that the plaintiff had sold to the defendant certain land for $5,000 upon the following terms:

"Five hundred dollars in cash in hand, the receipt of which is hereby acknowledged. This five hundred' dollars to be forfeited as liquidated damages if the second' party fails to comply with this contract."

The decision upon the point now under consideration turns upon whether or not the said sum of $500, which

it was stipulated should be forfeited as damages, is to be construed as liquidated damages or as a mere security for the performance of the contract. To state the proposition more definitely, is this an alternative contract? That is, does it give the defendant the right to elect to do either of two things, to forfeit the $500, or to carry out the terms of the contract by paying the balance and accepting a deed to the property? If this contract stipulates for the doing of one of two things in the alternative, the performance of a certain act, or the forfeiture of a certain amount of money in lieu thereof, then equity will not interfere to decree a specific performance, but will leave the injured party to a law action for the forfeiture. Pomeroy's Eq. Jurisprudence, vol. 1, sec. 447. But if the sum of $500 was paid over to the plaintiff by the defendant by way of a penalty to secure the performance of the contract in its entirety, the mere fact that it is termed a "forfeiture" or "liquidated damages" will not prevent the court from enforcing the specific performance of the entire contract. In other words, where the sum deposited, whether as a penalty or as stipulated damages, is for the purpose of securing the performance of the contract, equity will enforce a specific performance; but where the contract stipulates for one of two things in the alternative, that is, where the party has the right either to perform certain acts, or to pay a certain amount of money in lieu thereof, then equity will not decree a specific performance. Wat. Spec. Perf. Cont., sections 22, 23; Fry on Spec. Perf. Cont., sec. 66 *et seq.;* Pomeroy on Spec. Perf. Cont. (2d Ed.) sec. 50; *Koch v. Streuter,* 218 Ill. 546, 75 N. E. 1049, 2 L. R. A. (N. S.) 210.

In the case of *Lone Star Salt Co. v. Texas Short Line Ry. Co.* (Tex. Civ. App.) 86 S. W. 355, the court had under consideration the following clause of a contract, and it was there held that the same was inserted for the purpose of securing the enforcement of the performance of the contract, and not as liquidated damages:

"It is further agreed between the parties hereto that inasmuch as the damages for a breach of this contract by the first party would be impossible of satisfactory estimation under the rules of law, the same are hereby liquidated at the sum of six thousand dollars ($6,000) per annum, and the said first party hereby agrees to pay to the second party or his assigns the sum of six thousand dollars ($6,000) liquidated damages, for each year during said contract period in which said first party shall fail to tender to second party or his assigns for transportation sixty-six per cent. of its tonnage into and out of Grand Saline, which damages shall be payable annually as they accrue."

In *Kettering v. Eastlack*, 130 Iowa, 498, 107 N. W. 177, 8 Ann. Cas. 357, the court held the clause in the contract under consideration was for fulfillment, and not primarily to pay damages; the clause under consideration being as follows:

"It is further agreed that if either party to this contract shall fail to perform it according to its terms and tenor, and the other party is ready to perform it according to its terms and tenor, then the party so failing shall forfeit to the party who has not failed the sum of $500 as liquidated damages."

In the case of *Amanda Gold Mining & Milling Co. v. People's Mining & Milling Co. et al.*, 28 Colo. 251, 64 Pac. 218, the clause in the contract under consideration was as follows:

"It is agreed and understood that first parties failing to make the conveyance to said second parties as aforesaid, first parties will forfeit and pay to second parties the sum of one thousand ($1,000) dollars in lieu of said conveyance, and in full satisfaction thereof and of this agreement."

And the court held thereon as follows:

"The provision for payment by them of a certain sum, in lieu of their failure to convey, was inserted as a penalty for the faithful performance of their covenant to do that principal thing, and not as liquidated damages for its breach. In case of doubt whether a sum so fixed is a penalty or liquidated damages, courts lean toward the former. *Turck v. Mining Co.,* 8 Colo. 113 [5 Pac. 838]; *O'Keefe v. Dyer,* 20 Mont. 477 [52 Pac. 196]."

It has been stated to be the general rule that in the case of a penalty equity will, and in the case of liquidated damages will not, decree specific performance, and that, in case of doubt whether a sum so fixed is intended as a penalty or as liquidated damages, the courts will lean toward the former view. *Amanda Gold Mining, etc., Co. v. People's Min., etc., Co.,* 28 Colo. 251, 64 Pac. 218.

In *Broadwell v. Broadwell,* 1 Gilman (6 Ill.) 599, it is said:

"Where the performance of a thing is secured by a penalty, the doing of the thing, and not the payment of the penalty, is considered the substance of the transaction. The parties may, however, if they choose, stipulate that the obligor shall have the option either to do the thing or pay the penalty; but, as such a provision always gives one party a clear advantage over the other, such a construction is not given unless it is clear, from the face of the instrument, that such was the intention of the parties."

Along the same line is *Higbe v. Farr*, 28 Minn. 439, 10 N. W. 592:

"In all cases where a party relies on the payment of liquidated damages as a discharge, it must clearly appear that they were to be paid and received absolutely in lieu of performance. *Gray v. Crosby*, 18 John. (N. Y.) 223."

The statutes of this state expressly prohibit forfeitures, except under certain conditions; Rev. Laws 1910 providing as follows:

"Sec. 974. *Penalties Void.* Penalties imposed by contract for any nonperformance thereof, are void. But this section does not render void such bonds or obligations, penal in form, as have heretofore been commonly used; it merely rejects and avoids the penal clauses.

"Sec. 975. *Attempt to Fix Damages Void Except as Provided.* Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by the next section.

"Sec. 976. *Same—Exception.* A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

As our own statutes expressly prohibit forfeitures except where it would be impracticable or extremely difficult to fix the actual damages, a condition which does not exist in the case at bar, it will be presumed that the parties to the contract under consideration entered into the same with the knowledge that the law would not countenance or enforce a provision for an absolute for-

feiture, and therefore must have intended this deposit of $500 as a guaranty for performance. While it is plainly evident that it is difficult to construe this clause with absolute certainty, yet, taking into consideration the fact that the statute frowns upon a forfeiture, in conjunction with the further fact that courts are strongly inclined to construe contracts as not stipulating for liquidated damages, we are inclined to hold that the clause under consideration was placed in the contract for the purpose of securing the performance of the same.

Furthermore, looking directly to the actual wording of the contract itself, we are unable to decipher therein that it stipulates for one of two things in the alternative —either perform the contract according to its terms, or in lieu thereof submit to the forfeiture of the $500 deposited with the plaintiff. The contract merely provides that the $500 is to be forfeited if the defendant fails to comply with the terms of the contract, but there is lacking the alternative that he has an option to comply with the terms of the contract or forfeit the $500 in lieu thereof. As the contract is not alternative in its nature, a court of equity has jurisdiction to decree a specific performance thereof.

The next contention of defendant is, as plaintiff failed to present to him on the 1st day of January, 1912, a good and sufficient abstract showing clear title in herself, that she cannot for that reason now compel specific performance. The evidence produced on this proposition appears to be as follows: On the 1st day of January, 1912, the defendant went to the bank where the contract and other papers were to be deposited, and asked for the abstract of title to the land, and was informed that no abstract of title to the land had been

left there.  He then asked the husband of plaintiff, who was attending to the transaction for her, for the abstract, and he informed the defendant that he had failed to get an abstract, as he was not aware that plaintiff was to furnish an abstract, but that the same would be furnished, and that it would take a day or two to get it.  He at once ordered the same from an abstractor at Watonga, and the same reached Geary at 2:30 in the afternoon of the next day and was at once deposited in the bank and the defendant so notified.  In the meantime, on the morning of the 2d of January, the defendant went to the bank, tendered the amount due, and demanded the deed and abstract, and upon failure to present him with the same, then demanded his deposit of $500.  On the 3rd day of January, the defendant's attorney examined the abstract and found that it showed a mortgage against the land for $128, which had not been released, and he gave that as his reason for rejecting the same, and again demanded the $500 deposited and informed plaintiff that defendant deemed the matter closed.  The mortgage shown in the abstract had in fact been paid off about the 15th of December before, but plaintiff did not receive the release therefor until the 3rd or 4th of January, and the same was at once recorded, and then the abstractor made out a statement showing that fact on an extra sheet, which was placed in the abstract as a loose sheet.  The abstract in this condition was again presented to defendant on the 7th of January, but the defendant said that he considered he had done his part and the matter was at an end because the plaintiff had not made good her part of the contract.

No contention is now raised that the title of plaintiff to the land is not now perfect, but it is the con-

tention of defendant that, as a good and sufficient abstract had not been presented him as called for in the contract, his demand made on the 1st and 2d days of January operated as a rescission of the contract, and that he was thereby relieved therefrom.

The decision of the courts are practically uniform that time is never of the essence of the contract unless by its terms it is expressly so provided.

"An intention to make time of the essence cannot be inferred from the mere fixing of a day for the delivery of a deed." *(Virtue et al. v. Stanley et al..* [Wash.] 151 Pac. 270.)

"Where by the terms of the contract itself the parties agree that time shall be of the essence of the contract, either in these express words or in language equivalent, clearly indicating that it was so intended, plaintiff must perform, or offer to perform, within the time specified." (36 Cyc. 712.)

"A provision that time is of the essence has been held to be for the benefit of the vendor only, who may waive it and insist on performance by the vendee." (36 Cyc. 713; *Raymond v. San Gabriel Valley Land Co.,* 53 Fed. 883, 4 C. C. A. 89.)

"An intention to make time essential cannot be inferred from the mere appointment of a day for the delivery of the deed or the payment of the price." (36 Cyc. 713.)

Even in the absence of decisions to that effect, we have a statute which sets the matter at rest. Rev. Laws 1910, sec. 968, is as follows:

*"Time Not of Essence Unless so Provided.* Time is never considered as of the essence of a contract, unless by its terms expressly so provided."

See *Snyder v. Stribling,* 18 Okla. 168, 89 Pac. 222.

The claim that the land was the homestead of the plaintiff and husband was abandoned, and the claim that the abstract presented defendant failed to show that there were no judgments in the federal courts against the plaintiff is without merit.

We recomemnd that the judgment be affirmed.

By the Court: It is so ordered.