[No. 14343.　Department One. — August 8, 1891.]

## MARY H. NEWTON, Respondent, *v.* B. J. HULL, Appellant.　W. D. READ et al., Defendants.

Vendor and Purchaser — Contract of Sale — Time of Essence — Forfeiture — Default of Purchaser — Time for Tender of Deed — Enforcement of Contract — Reformation — Vendor's Lien. — Under a contract for the sale of land providing for the payment of the purchase price in installments, to be paid upon specified dates, and for the execution of a deed upon the payment of the last installment, and which makes time of the essence of the contract, and provides for a forfeiture of all moneys paid upon default of the purchasers, and that the vendor shall thereupon be released from all obligation to convey, the vendor is not in default until his refusal to convey upon a tender of the purchase-money, and is entitled, upon tendering the deed, to demand payment of the purchase-money even after the last installment is overdue, and upon the purchaser's refusal to pay may bring an action to reform the agreement for a mutual mistake therein, and to foreclose his lien upon the property for the unpaid portion of the purchase-money.

Id. — Stipulation for Benefit of Vendor — Election of Vendor — Rescission. — The stipulation in the contract that time should be of the essence of the contract is applicable only to the agreement on the part of the purchaser to pay the purchase-money, and is intended for the benefit of the vendor alone, who may elect either to rescind or enforce the contract; and the purchaser cannot work a rescission by mere default on his part in payment of the purchase-money.

Id. — Reformation of Contract — Mistake in Description — Pleading — Findings — Mutual Mistake. — In an action to reform an agreement for the sale of land, an averment in the complaint, to the effect that by mistake a description of the land different from that intended by the parties to the agreement was inserted therein, is, in the absence of a demurrer, a sufficient allegation that the mistake was a mutual mistake of the parties to the agreement, and a finding in the language of the complaint is sufficient to support the judgment.

Foreclosure of Vendor's Lien — Order of Sale — Clerical Error in Description — Motion to Correct — Appeal — Costs. — A mere clerical error in the order of sale issued to the sheriff rendering the order uncertain as to the amount of land to be sold should be corrected on motion in the trial court, and an appeal is not necessary to correct it, until a motion for that purpose has been denied by the trial court; and the costs of an appeal without such application must be borne by the appellant.

Appeal from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

| 90 | 487 |
| 95 | 261 |
| 95 | 338 |
| 95 | 575 |
| 90 | 487 |
| 96 | 105 |
| 90 | 487 |
| 97 | 499 |
| 90 | 487 |
| 98 | 171 |
| 90 | 487 |
| 99 | 86 |
| 90 | 487 |
| 102 | 91 |
| 90 | 487 |
| 113 | 661 |
| 90 | 48. |
| 123 | 9 |
| 90 | 487 |
| e138 | 102 |
| 138 | 103 |

The facts are stated in the opinion of the court.

*I. Hall*, and *Holloway & Kendrick*, for Appellant.

It appears from the complaint that the contract came to an end by the mutual failure of both parties to perform, and cannot therefore be enforced by either party. (*Cleary* v. *Folger*, 84 Cal. 316. See also Civ. Code, sec. 1490, and *Bigler* v. *Morgan*, 77 N. Y. 318.) No cause of action for revision of the contract on the ground of mistake is alleged. Although it is stated in the complaint, in general terms, that a mistake in certain respects was made, it is not alleged to be a "mistake of the parties," or "a mistake of one of the parties which the other at the time knew or suspected." (Civ. Code, sec. 3399; *Higgins* v. *Parsons*, 65 Cal. 280.) No facts or circumstances are set forth showing a mistake within the legal definition of the word under the code. (See Civ. Code, sec. 1577.) The essential facts must be stated distinctly in unequivocal language, and not left to inference, and the language, if doubtful, must be construed most strongly against the pleader. (Story's Eq. Pl., sec. 247; *Moore* v. *Besse*, 30 Cal. 570; *Barfield* v. *Price*, 40 Cal. 540; *Wright* v. *Shafter*, 48 Cal. 275.) A mistake, under the definition of our code (Civ. Code, sec. 1577), is not made out by simply showing that the contract does not "truly express the intention of the parties." It must be an error "not caused by the neglect of a legal duty on the part of the person making the mistake." (Civ. Code, sec. 1577; *Hawkins* v. *Hawkins*, 50 Cal. 558; *Senter* v. *Senter*, 70 Cal. 623; *Metropolitan Loan Ass'n* v. *Esche*, 75 Cal. 517.)

*Lee, Gardiner & Scott*, and *W. P. Gardiner*, for Respondent.

The expression "time being of the essence of this contract," in the contract, was for the benefit of the vendor, and not of the vendees, and it is so stated in the

writing. Therefore, even if the vendees had not been in default, as they were before the final payment became due, the vendor was not obliged to tender a deed upon the very day named in the contract for the final payment. (*Vorwerk* v. *Nolte*, 87 Cal. 236; *Drew* v. *Pedlar*, 87 Cal. 443.) Even if it were necessary to tender a deed upon the day named in the contract for the last payment, the delay in making the tender was excused by the failure of the vendees to make the intermediate payment,· as such failure naturally tended to convince the vendor that it would be an idle thing to tender the deed. (Civ. Code, sec. 1511, subd. 3.) Refusal by one party to perform, when not retracted before the time for performance, excuses the performance by the other. (*Bunge* v. *Koop*, 48 N. Y. 225; *Buffkin* v. *Baird*, 73 N. C. 283; *Sullings* v. *Goodyear Dental Co.*, 36 Mich. 313; *Haines* v. *Tucker*, 50 N. H. 307, 312; Civ. Code, sec. 1440.)

VANCLIEF, C.—Action to reform an agreement by which the defendants Hull and Read agreed to purchase, and plaintiff to sell, two fifths of a piece of land situate in Los Angeles County, containing about seventeen acres, together with eight shares of the capital stock of the Lake Vineyard Land and Water Association, a corporation; and also to foreclose the vendor's lien upon the property for the unpaid portion of the purchase-money.

It is alleged in the complaint that by mistake in drawing the written memorandum of the agreement the words "undivided two fifths of" were omitted from the description of the land, so that the memorandum purports to be that of an agreement to sell the whole undivided piece of land, but that the parties to said memorandum intended to insert therein a description of only the undivided two fifths of the piece of land therein described. It is further alleged that by mistake of the draughtsman the description of the land in the written memorandum re-

fers to page 312 of book 118 of deeds in the recorder's office, instead of page 407 of book 167.

A copy of the written agreement, bearing the date of November 1, 1887, is set out in the complaint, and its execution is admitted.

The price to be paid for the land and water stock was $10,000, in the following installments: $3,333.33 in hand, on the execution of the agreement, which was paid accordingly; $3,333.33 on or before May 1, 1888; and $3,333.33 on or before November 1, 1888; interest on deferred payments at ten per cent per annum.

The other terms of the agreement pertinent to the question to be decided are as follows: "In the event of a failure to comply with the terms hereof by the said parties of the second part, the said party of the first part shall be released from all obligations in law or equity to convey said property, and said parties of the second part shall forfeit all right thereto, and shall also forfeit to said first party all right to any and all moneys theretofore paid thereon, time being of the essence of this contract. And the said party of the first part, on receiving such payment, at the time and in the manner above mentioned, agrees to execute and to deliver to the said parties of the second part, or their assigns, a good and sufficient deed conveying the above-described property, and to deliver said water stock."

The defendants Hull and Read failed and refused to pay the second and third installments, or any part thereof, up to the time of the commencement of this action, April, 1889.

The complaint also contains the following: "That on or about February 7, 1889, plaintiff demanded payment from defendants B. J. Hull and W. D. Read of all the unpaid balance due and owing to plaintiff under and by virtue of the terms of said agreement, to wit, demanded payment from defendants B. J. Hull and W. D. Read thereunder, of the sum of $6,666.66, together with inter-

est thereon at the rate of ten per cent per annum from November 1, 1887, until date of such payment; that thereupon plaintiff tendered and offered to deliver to defendants B. J. Hull and W. D. Read, on receiving such payment, a good and sufficient deed conveying to defendants the title to said property so as aforesaid agreed to be conveyed, to wit, said undivided two fifths of said 17.42 acres of land; that thereupon plaintiff tendered and offered to assign and deliver to defendants B. J. Hull and W. D. Read said eight shares of capital stock of said Lake Vineyard and Water association, a corporation as aforesaid.

"13. That thereupon defendants B. J. Hull and W. D. Read declined and refused to accept or receive either said deed or said water stock, and declined and refused to pay to plaintiff said $6,666.66, or any part thereof; that thereupon defendants B. J. Hull and W. D. Read expressly stated that they would not make any further payments under said contracts."

All the defendants except Hull made default, or disclaimed any interest in the suit.

Hull answered, and also filed a cross-complaint praying for a rescission of the agreement and a judgment against plaintiff for $1,666.66, that being the portion of the purchase-money alleged to have been paid by him.

The court found for the plaintiff on all the issues, and rendered judgment accordingly.

The defendant Hull alone appeals from the judgment, and from an order denying his motion for a new trial.

1. It is contended for appellant that because it does not appear that plaintiff tendered to defendants a deed of the land on the first day of November, 1888, when the third and last installment of the purchase-money became due, she was in default equally with the defendants; that "time being of the essence of the contract," the deed must have been tendered " at the time agreed upon, and at no other time "; and that by the mutual default of

both parties "the contract came to an end, and cannot be enforced by either party."

To maintain this position, counsel rely, principally, upon the case of *Cleary* v. *Folger*, 84 Cal. 316; but I think the opinion of the commissioners in that case (in which I concurred), in so far as it sustains the point made here by appellant's counsel, is out of line with the otherwise uninterrupted current of authority in this state. It is not sustained by the cases therein cited. The case of *Bohall* v. *Diller*, 41 Cal. 532, therein cited, decides nothing as to the point under consideration here, except that a party who agrees to convey land *upon the payment of the purchase-money* cannot recover the purchase-money until he tenders a deed, but does not decide that he will be in default unless he tender a deed on the very day the purchase-money becomes due. In *Englander* v. *Rogers*, 41 Cal. 420 (also cited), the facts were, that the party agreeing to purchase paid a part of the purchase-money, under an agreement that it should be refunded if upon payment of the balance the vendor should not convey a good title. He sued the vendor to recover back the sum he had paid, without averring that he had tendered payment of the balance of the purchase-money. The court said: "The covenants of the vendor and vendee were mutual and dependent, and neither could put the other in default, except by tendering a performance on his own part, unless the other party either waived the tender, or by his conduct rendered it unnecessary. To entitle the plaintiff to maintain the action on the contract set out in the complaint, he should have averred a tender of the unpaid portion of the purchase-money, or some sufficient excuse for the omission to tender it." This neither implies nor warrants the inference that the vendor might not have recovered the unpaid purchase-money *after tendering the conveyance of a good title*, as was done in the case at bar, but rather the contrary. The report of the case does not show

any express limitation of the time within which either
party was to perform; nor does it appear that the time
of performance by either party was of the essence of the
contract. It follows that the case can have no proper
application to the point here under consideration. Nor
was the point to which it was cited in *Cleary* v. *Folger*, 84
Cal. 316 (viz., that the defendant in that case " was no
longer obliged to make a deed to the premises, . . . . as
the balance of the purchase-money was not tendered "),
relevant or material in that case, since the defendant
(vendor) in that case had not been asked to make a deed.
He was only asked to refund that portion of the pur-.
chase-money which the plaintiff had paid; and though
it may have been true that he " was no longer obliged to
make a deed," it did not thence follow that he would not
have been entitled to recover from the plaintiff (vendee)
the unpaid portion of the purchase-money in case he
had tendered a deed, as did the vendor in the case at
bar.

Undoubtedly, time is of the essence of the contract
under consideration, so far as it is expressed or implied
that it should be so. It is expressly of the essence of
the agreement on the part of the defendants to pay the
last two installments of the purchase-money, and as to
which they were put in default by the plaintiff's tender
of a deed and demand of payment on the seventh day of
February, 1889, three months after the last installment
became due; but as to the agreement on the part of the
plaintiff to convey the land "on receiving such pay-
ment," there was no default whatever, as there was no
tender of payment by the defendants, or either of them.
(*Hill* v. *Grigsby*, 35 Cal. 656, and cases there cited; *Eng-
lander* v. *Rogers*, 41 Cal. 421; *Bohall* v. *Diller*, 41 Cal.
532.) But the stipulation that time is of the essence of
the contract seems to be applicable only to the agree-
ment on the part of the defendants to pay the purchase-
money, and to be intended for the benefit of the plaintiff

alone. (*Wilcoxson* v. *Stitt,* 65 Cal. 596; 52 Am. Rep. 310, and cases there cited; *Vorwerk* v. *Nolte,* 87 Cal. 236; *Smith* v. *Mohn,* 87 Cal. 489.) It is true that the plaintiff was not obliged to accept payment and convey the land at any time after the defendants had failed to pay the second installment at the time it became due (May 1, 1888), and at any time thereafter she might have elected to rescind the agreement (*Grey* v. *Tubbs,* 43 Cal. 359); but, as above remarked, it does not follow that the defendants could work a rescission of the agreement, or avoid their obligation to pay the purchase-money, by simply refusing to pay it, or by delaying payment thereof until after it became due. There is no provision in the agreement that the plaintiff should forfeit her right to the purchase-money in case the defendants should fail to pay it on or before the day on which it became due, nor in case she failed to tender a deed on that day, or at any time before the defendants tendered payment of the purchase-money. Nor was she bound to tender a deed, except upon tender of payment of the purchase-money. (*Smith* v. *Mohn,* and *Wilcoxson* v. *Stitt, supra.*) As we have seen, she could not be put in default, even after the purchase-money was overdue, except by her refusal to convey *upon tender of the purchase-money.* She was therefore entitled, upon tendering the deed, to demand payment of the purchase-money on the seventh day of February, 1889, as she did, and upon defendants' refusal to pay, to bring this action.

2. Counsel for appellant contend that the complaint does not state facts sufficient to entitle plaintiff to a reformation of the written memorandum of the agreement, the alleged deficiency being that it is not averred that the mistake complained of was a *mutual* mistake of the parties, nor a mistake of one party which the other at the time knew or suspected.

Inasmuch as there was no demurrer to the complaint on any ground, I think it should be held sufficient to

show that the mistake was a mutual mistake of the parties. The complaint states that the agreement was to sell an undivided two fifths of the land described in the written memorandum; that the plaintiff owned only two fifths thereof; "that the parties to said memorandum of agreement *intended* to insert therein a description of the undivided two fifths of the premises," but "that by mistake in drawing said memorandum of agreement the description of said lot or parcel of land was therein set forth incorrectly, in the following particulars," and then proceeds to state definitely the mistake and how it happened to be made. To say that by mistake a description different from that intended by the parties to the agreement was inserted therein, is to say, substantially, that the mistake was a mutual mistake of the parties to the agreement.

3. The objection that the findings do not support the judgment is made upon no other ground than those upon which it is claimed that the complaint is insufficient; and since the findings are quite as full and specific as the complaint as to the mutual mistake of the parties, this objection should be overruled.

4. In their reply brief, for the first time, counsel for appellant call attention to a mistake (evidently merely clerical) in the order of sale, by which that order is made at least ambiguous and uncertain as to whether the whole or only two fifths of the piece of land described is to be sold by the sheriff. In the second paragraph of the decree it is ordered "that the land and premises in the complaint, and hereinafter described," be sold, etc. This evidently refers to the description in the first paragraph of the complaint, which is the same as that in the *revised* agreement; but the uncertainty is created by what purports to be a description of the land "directed to be sold," in the last paragraph of the decree, where it (the land to be sold) is particularly described by metes and boundaries as an entire piece of land containing 17.42

acres, instead of being described as the undivided two fifths of that piece of land, as it should have been described.

This error might, and should have been, corrected on motion in the trial court, as the record contains all the *data* necessary for that purpose. There was no necessity for an appeal to correct it, at least until after a motion for that purpose had been denied by the trial court.

I think the judgment and order should be affirmed in all respects, except that the court below should be directed to correct the description of the land directed to be sold, as indicated in this opinion, on motion of either party, the costs of this appeal to be borne by the appellant.

FOOTE, C., and FITZGERALD, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed, and the court below is directed to correct the description of the land directed to be sold, indicated in this opinion, on motion of either party, the costs of this appeal to be borne by the appellant.

Hearing in Bank denied.