[Civ. No. 6598.   First Appellate District, Division Two.—March 11, 1929.]

GEORGE W. GREENE, Appellant, v. JOHN H. RIORDAN, Respondent.

Goldman, Nye & Spicer, Goldman, Nye & Reed M. Clarke and Morgan V. Spicer, for Appellant.

Louis V. Crowley, Knight Boland & Christin, Frank L. Guerena and Thomas J. Riordan for Respondent.

LUCAS, J., *pro tem.*—In this case there is pending before the court a motion to affirm the judgment of the lower court by reason of appellant's alleged failure in his duty to print in his brief or in the supplement thereto all portions of the record necessary to be considered by this court. The motion is denied and the appeal will be heard on its merits.

Plaintiff, George W. Greene, sued on three counts: First, to have an instrument, in form a grant deed, declared a mortgage; second, for a judgment for $33,000 alleged balance due under a contract of sale of real property, and third, for a judgment declaratory of the respective rights and duties of the parties under said contract. By way of cross-complaint defendant, John H. Riordan, sought to quiet title to the lands described in plaintiff's first cause of action. In its judgment the trial court adjudged the instrument alleged to be a mortgage to be in fact a deed, quieted title

of defendant to the lands described in said deed, and decreed that plaintiff take nothing by his action, but otherwise made no declaration of the rights of the parties.

From this judgment plaintiff appeals on four grounds, contending respectively that the judgment quieting Riordan's title is erroneous, that the finding and judgment that the deed is not a mortgage is erroneous, that the agreement of sale was void, and that the court erred in determining the rights of the parties thereunder. At the trial considerable oral evidence was received tending to show the intent of the parties, but since such evidence was somewhat conflicting and the first three points raised by appellant can be disposed of by analyzing the rather involved agreement, together with the acts of the parties subsequent to its execution, such analysis will be given first consideration.

By agreement dated September 4, 1925, and signed shortly before noon on September 5, 1925, the said Greene agreed to sell and the said Riordan agreed to buy that portion of five San Francisco city blocks (1259 to 1263, both inclusive) lying north of a red line shown on a diagram attached to the agreement. The purchase price was $55,000, payable by Riordan as follows: $22,000 to the City Title Insurance Company for the account of Greene on or before September 5, 1925, at 12 o'clock noon; the balance of $33,000 to said title company for the account of Greene on or before sixty days after date of the agreement. The title company was forthwith (i. e., upon receipt of the $22,000) to pay the same to one Lizzie Lobree upon receipt from her of a deed reconveying (to Greene) all of blocks 1259 and 1260, excepting a portion or "strip" of block 1259 owned by one Carl Larsen.

Greene agreed to convey clear title to all of said property, and if unable to do so, Riordan, when he was ready and offered to pay the balance of the purchase price, could elect not to consummate the agreement. In such event Greene promised to repay to Riordan the sum of $22,000 with interest from September 5, 1925, at the rate of one per cent per month. To secure such repayment by Greene "upon such event" the agreement provided that Greene "hereby mortgages" (to Riordan) "all his interest in all of said blocks 1259 to 1263, both inclusive." Riordan retained any right

which he might have for damages for Greene's failure to perform.

Greene further agreed that should he fail to deposit with said title insurance company on or before September 5, 1925, at 11:30 A. M., a deed conveying to him clear title to a strip of land owned by said Carl Larsen in block 1259 he would grant to Riordan all of blocks 1259 and 1260, excepting the Larsen strip in block 1259, in consideration of the above mentioned sum of $22,000 having been paid by Riordan at the time and in the manner above specified.

Greene also agreed to execute concurrently with this agreement a deed conveying said property (all of blocks 1259 and 1260, excepting the Larsen strip in 1259) to Riordan and to deposit the same with said title insurance company with instructions to record the same upon Riordan's request. It is to be noted that this includes not only that portion of blocks 1259 and 1260 lying north of the red line shown on the diagram above referred to, but that portion lying south of said red line as well.

In the event that Greene deposited with said title company on or before thirty days from date, i. e., thirty days from September 4, 1925, a deed conveying to him (Greene) clear title to all of the Larsen strip in block 1259, together with a deed conveying to Riordan clear title to all of the portion of blocks 1259 to 1263, both inclusive, lying north of the above-mentioned red line, then and in that event Riordan was to reconvey to Greene all of blocks 1259 and 1260 lying south of said red line. Time was made of the essence of the agreement.

Comparing the promises of the parties to *do,* as shown by the above agreement, with what they actually *did,* as shown by the evidence, we find:

1. Riordan promised to pay $22,000 to the title company for Greene's account on or before 12 o'clock noon on September 5, 1925. He kept his promise and paid the money. The title company followed instructions, paid this money to Lizzie Lobree and received from her the proper deed of reconveyance.

2. Greene agreed to execute concurrently with the agreement a deed conveying to Riordan all of blocks 1259 and 1260, excepting the Larsen strip, and to deposit said deed

with the title company. He kept his promise by executing and so depositing such instrument. In accordance with their instructions, the title company, at Riordan's request, placed the deed of record.

3. Greene promised that should he fail to deposit with the title company on or before September 5, 1925, at 11:30 A. M., a deed giving him title to the Larsen strip, he would grant to Riordan all of blocks 1259 and 1260, excepting said strip, in consideration of Riordan's above-mentioned payment of $22,000. He failed so to deposit the deed to the Larsen strip. In fact, the record shows that at the time he signed the agreement he knew he would be unable to do so. He now seeks to avoid his promise to grant Riordan blocks 1259 and 1260 in consideration of the said $22,000 payment, and to avoid the effect of the deed he executed in accordance with such promise, by claiming the deed executed and delivered, as stated in paragraph 2 above, to be a mortgage.

4. Riordan promised to reconvey to Greene all of blocks 1259 and 1260 lying south of the red line if Greene should within thirty days from September 4, 1925, deposit with the title company a deed to the Larsen strip together with a deed conveying to Riordan all of blocks 1259 to 1263 lying north of the red line. Greene did not deposit with the title company either of these conveyances within the thirty-day period. Riordan accordingly did not execute his deed of reconveyance. His promise to do so being conditional and the conditions being unfilled by Greene, his failure so to do does not constitute a broken promise on Riordan's part.

5. Riordan promised to pay the balance of the purchase price of that portion of the five blocks lying north of the red line, to wit, $33,000 on or before sixty days after September 4, 1925. He failed to do so.

6. Greene promised to convey to Riordan clear title to all of the five lots lying north of the red line at the time Riordan was ready and offered to pay the balance of the purchase price. Riordan was never ready and never offered to pay said balance. Greene neither tendered nor deposited at any time a deed to the northerly part of said blocks, but did on the last day of the sixty-day period deposit with the title company a deed to the Larsen strip with instructions that it be delivered on conditions entirely foreign to

anything contained in the original agreement. This deed he withdrew the following day.

With these facts in mind the court is of the opinion that the judgment quieting Riordan's title to blocks 1259 and 1260 was not erroneous. The effect of the agreement and the execution and delivery of the concurrent deed in consideration of the down payment of $22,000 was to vest the title to these two blocks in Riordan on September 5, 1925, when Greene failed to deposit a deed to the Larsen strip. The title having vested, Greene lost all rights therein other than the right to a reconveyance of the southerly portion of said blocks in the event a deed to the Larsen strip and a deed to the northerly portion of the five blocks were deposited by him within thirty days. The obligation of Riordan to reconvey was extinguished by Greene's failure to deposit said deeds within the thirty-day period and he was therefore entitled to quiet his title against Greene.

Nor was the position of the parties any different with respect to these two blocks during the time intervening between the expiration of the thirty-day period and the end of the sixty-day period given Riordan in which to pay the balance of the purchase price of the northerly portion of all five blocks. During such intervening time Riordan held his completed title to blocks 1259 and 1260 with the additional right to terminate the whole contract should Greene's title fail at the time the balance of the purchase price was tendered. This was a privilege given exclusively to Riordan, but one which he was never able to exercise because of his failure to make such tender.

We are also of the opinion that the trial court did not err in its finding and judgment that the purported deed was in fact a deed and not a mortgage. As pointed out above, Riordan promised to pay the balance of the purchase price of the northerly portion of the five blocks within sixty days. At the time he was ready and actually offered to pay such balance, should he find Greene unable to convey a clear title, he had the option of refusing to consummate the agreement, of demanding the return of his $22,000 with interest, and of suing Greene for damages. By the agreement (not by the deed) Greene mortgaged all of his interest in the five blocks (not merely blocks 1259 and 1260) to secure the repayment of the $22,000 and interest in the event Riordan chose to exercise his option.

As to blocks 1259 and 1260 Greene had nothing to mortgage, for, concurrently with the execution of the agreement to mortgage the five blocks, he had executed and delivered a deed to blocks 1259 and 1260, the effect of which, as seen above, was to vest the fee thereto in Riordan, subject only to Greene's right (upon certain conditions which he failed to fulfill) to a reconveyance of the southerly portion thereof within the thirty-day period. As to the remaining three blocks, the mortgage feature of the agreement was to become effective only in the event of Riordan exercising his option to terminate the contract and demanding the return of his money upon Greene's failure or inability to perform. Since Riordan never offered to pay and never exercised his option to terminate, the agreement never became effective as a mortgage.

Appellant points out certain facts and circumstances in addition to the agreement itself upon which he relies as proof that the deed is a mortgage, namely, retention of possession of the property by Greene; payment of taxes by Greene; the disparity between the amount paid for blocks 1259 and 1260 and the value thereof (although the testimony as to value is conflicting) ; Greene's bad financial condition and the fact that the $22,000 paid by Riordan went wholly to discharge an existing encumbrance. Such weight as might be given this testimony is more than offset by the testimony of Riordan and that of Greene's own attorneys (who advised him at all times during the negotiations preliminary to and at the time of the excution of the agreement) that the deed was never intended to be a mortgage.

In the argument urged in support of the third ground of appeal, namely, that the agreement of sale was void, we find no merit. It is contended that the agreement was violative of the statute of March 15, 1907 (Stats. 1907, p. 290), in that the agreement of sale was made by reference to an unrecorded map. The deed of blocks 1259 and 1260, however, could not be void for this reason because this deed describes the property fully by metes and bounds as well as by reference to a recorded map. Neither can it be successfully contended that the agreement for the sale of the balance of the property is void, because the point was not raised at the trial of the cause, and even if applicable to a case of this kind where the purchaser himself pre-

pared the agreement, the record is silent as to whether or not the map and diagram in question was actually recorded.

The burden of showing nonrecordation is upon the plaintiff and appellant.

In the final ground of appeal urged by appellant, it is contended that the court erred in determining the respective rights and duties of the parties under the agreement of sale and deed, first, by making erroneous findings, and second, by failing to find at all on certain points.

As to alleged erroneous findings, appellant cites as error that portion of finding 9 wherein the court found that Riordan agreed to pay $55,000 on condition that Greene deposit with the title company within thirty days a deed to the Larsen strip, together with a deed to the lands agreed to be purchased. Appellant's contention in this regard the court believes to be sound. Riordan's obligation, upon Greene depositing with the title company within the thirty-day period a deed to the Larsen strip, together with a deed to all of blocks 1259 to 1263 lying north of the red line, was limited to a reconveyance by him to Greene of all of blocks 1259 and 1260 lying south of the red line. Greene's failure to so deposit said deeds within the thirty-day period relieved Riordan of his obligation to reconvey said southerly portion of said two blocks, but did not, in the opinion of the court, relieve Riordan of his obligation to pay the balance of the purchase price for the northerly portion of the five blocks upon receipt of a clear title thereto.

In conformity with this opinion it is ordered that all of finding 9, beginning with line 19 on page 36 of the filed transcript on appeal down to and including the word "and" in line 10 on page 37 thereof be and the same hereby is stricken from the record and that after the word "performed" in line 16, page 37 of said transcript, there be inserted the words "except that it is true that defendant did not pay to plaintiff the sum of $33,000."

Likewise, in accordance with the views herein expressed it is ordered that there be stricken from finding 10 all of lines 22, 23, 24 and line 25 ending with the figures "1259," as the same appear on page 38 of said filed transcript.

It is further ordered that the words "and the defendant would" be stricken from line 20, page 39 of said transcript,

and that there be inserted in lieu thereof a period and the words "Defendant agreed."

It is further ordered that the words "and without any further or other obligation on the defendant in the premises" be stricken from lines 21 and 22 on page 40 of said transcript; and there is hereby ordered inserted in finding 8, after the word "defendant" in line 25, page 35 of said transcript, the following words: "subject only to the right of a reconveyance of that portion of said blocks 1259 and 1260 lying south of the said red line upon plaintiff depositing within thirty days from September 4, 1925, with the said title company, a deed to the said Larsen strip, together with a deed conveying to defendant all of blocks 1259 to 1263, both inclusive, lying north of said red line."

As to plaintiff's assertion that the trial court failed to find at all upon certain points, it is contended that the court should have construed the agreement and deed, and should have determined whether or not the agreement was still subsisting and subject to performance; whether either appellant or respondent was in default; and what were the further rights and obligations of the parties at the time of the trial. Appellant's contention in this regard the court believes to be unsound.

The authority asking for declaratory relief is to be found in sections 1060, 1061, and 1062 of the Code of Civil Procedure, which follow:

1060: "Any person interested under a deed, will or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his *rights* and *duties* in the premises, including a determination of any *question* of *construction* or *validity* arising under such instrument or contract. He may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of such rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force of a final judgment. Such declaration may be had before there

has been any breach of the obligation in respect to which said declaration is sought."

1061: "The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances."

1062: "The remedies provided by this chapter are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action, and no judgment under this chapter shall preclude any party from obtaining additional relief based upon the same facts."

The main controversy between the parties to the contract of September 4, 1925, and the deed of September 5, 1925, was as to whether or not the deed to blocks 1259 and 1260 should be construed as a mortgage. This question was fully adjudicated by the trial court and determined adversely to appellant.

The next controversy between the parties was as to whether or not Greene was entitled to secure the sum of $33,000 from Riordan. This question was likewise fully adjudicated by the trial court and determined adversely to appellant.

Having made such adjudication and in so doing having placed a construction upon and determined the validity of the written instruments in question for the guidance of the parties, the trial court was, under section 1061 of the Code of Civil Procedure, above quoted, required to do no more. This court agrees with the trial court in its construction of the instrument of September 5, 1925, by holding it to be a deed rather than a mortgage, and, while differing to some extent from the trial court in its construction, has fully construed the agreement of sale of September 4, 1925.

If the construction placed by this court upon said agreement of sale is, as we believe it to be, correct, so far as this court can determine from the record the parties thereto are in no different position from that occupied by parties to an ordinary contract of sale in which time is made of the essence, where the purchaser fails to tender the balance of the purchase price within the limit of time provided by the agreement, and where the seller fails at all times to tender a deed conveying clear title to the lands under contract.

Having so concluded, this court is of the opinion that it has done all that it properly can do in determining the rights and duties of the parties.

It would appear from an examination of the record, although but little attention was given to the subject of declaratory relief at the trial of the cause, that the agreement of sale was in effect, at least to some extent, at the time of trial. ██ The stipulation in a contract that time be made of the essence of the contract has been held to be applicable only to the agreement on the part of the purchaser to pay the purchase money and is intended for the benefit of the vendor alone, who may elect either to rescind or enforce the contract, and that the purchaser cannot work a rescission by mere default on his part in payment of the purchase money. (See *Newton* v. *Hull,* 90 Cal. 487 [27 Pac. 429].)

Whether or not the agreement of sale is still effective for any purpose depends largely upon the solution of the question as to whether or not the provision therein making time of the essence has been waived by the acts of the parties. The acts of the parties subsequent to the time of trial may have entirely altered their rights and duties. It would therefore avail nothing to remand the case to the the trial court for a declaration of the present rights and duties of the parties. With the construction and validity of the agreement determined and with the facts of the case peculiarly within their knowledge, the parties to this action are now in a position to secure through ordinary legal procedure not a mere declaration, but a final, exclusive and presently enforceable determination of their rights and duties, should the facts warrant the court in determining that any exist.

With the findings corrected as hereinabove ordered, the judgment appealed from is affirmed.

Koford, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 10, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 9, 1929.

All the Justices present concurred.