ALBERT MARTINSEN, Appellee, v. MORTON FARMERS MUTUAL INSUR-
ANCE ASSOCIATION, Appellee; EDSON R. SUNDERLAND,
Intervener, Appellant.

No. 42195.

DECEMBER 12, 1933.

Genung & Genung, for plaintiff, appellee.

Keenan, Barnes & Clovis, for intervener, appellant.

CLAUSSEN, J.—Plaintiff made a written contract with one T. H. Read for the purchase of a half section of land in Page county. Plaintiff entered into possession of the land under the contract. Difficulties were encountered in making the title to the land good and the purchase contract was never performed. Ultimately plaintiff moved off the land. Under foreclosure of a mortgage the interest in the land had by plaintiff and Read's assignee was cut off. In the meantime plaintiff secured a policy of insurance from defendant insurance company on the dwelling house on the land. The house was destroyed by fire resulting in a loss of at least $2,400, the amount of the insurance. This action was brought to recover upon the policy. The defendant insurance company admitted its liability

on the policy in the amount of $2,400, but alleged that parties other than plaintiff claimed the insurance. Intervener is an assignee of Read. He claims the insurance money as such assignee, under certain provisions of the purchase contract. These provisions will be later noticed in detail. The trial court awarded one-half of the insurance money to plaintiff and the remainder to intervener. Neither plaintiff nor intervener was satisfied with the disposition made of the case, and each has appealed to this court.

It cannot be determined from the record whether the action was brought at law or in equity. The case was tried to the court. The record apparently contains all matters necessary for a trial anew in this court, and such seems to be the desire of the parties. The case will be considered *de novo*.

The contract between plaintiff and Read was made on November 25, 1925. The contract was to be performed on March 1, 1926. It was provided in the contract that Read might cancel the contract at any time until December 25, 1925, if he found that he could not deliver title. On December 24, 1925, the period during which the contract could be canceled by Read was extended to January 5, 1926, and finally it was agreed that Read should have such time as he found to be needed to perfect the title.

Read's title to the land was not good. Litigation ensued, and on May 1, 1926, a decree was entered in the Page district court establishing the title in Read and two other parties, in undivided interests. In November of the year 1926 one of such other parties conveyed his interest to Read, and in August of the year 1928 the other party conveyed to Read. In the meantime Read had assigned his contract with plaintiff, and thus the situation was created in which Read had to convey the land to plaintiff but the payments had to be made to the assignee. Between Read and intervener are two intermediate assignees. The assignment of the contract was held by each assignee as security for the payment of notes signed by Read, totaling $15,000. Read was an old man and his business affairs seem to have been attended to by two sons. In May of the year 1929 plaintiff wrote a registered letter to Read demanding performance of the contract. He then had ample funds on deposit in the bank to perform his part of the contract. One of Read's sons testified that during the month of May, 1929, he and the first assignee of the contract drove to plaintiff's home taking with them an abstract of title to the premises and proper deeds, but that plaintiff

was not at home. The son states that he then told plaintiff's wife that the abstracts would be at his home in Shenandoah, where plaintiff could get them. In the year 1928 plaintiff had some correspondence with the first assignee of the contract in which he was urging the performance of the contract and in which he advised of his ability to carry out his part of the contract, but the title was not then in shape. The record discloses no instance prior to the trial of this case when the plaintiff refused to perform the contract. The abstract of title to the land was first tendered to plaintiff in the courtroom upon the trial of this case in 1933.

 Notwithstanding the willingness and ability of plaintiff to perform the contract over a period of nearly four years, the contract was not performed. During a period of nearly three years Read's title was defective. Under the contract Read was given "whatever time he finds is necessary" to perfect his title, but this means only a reasonable length of time under all the circumstances. The time taken in perfecting the title was unreasonable. Carroll v. Mundy & Scott, 185 Iowa 527, 170 N. W. 790, 4 A. L. R. 811.

The record does not directly disclose the fact, but the inference cannot be avoided that the delay in consummating the transaction was due to a desire to permit attrition to accomplish its usual effects on the holders of Read's notes, secured as they were by the assignment of the purchase contract. In April of the year 1931 a decree of foreclosure was entered in a suit brought by Luella J. Read against plaintiff and others to foreclose what is described in the record as "the premium interest or commission mortgage" in connection with a $31,700 mortgage, subject to which plaintiff had agreed to take title. Whether Luella J. Read was related to Read the vendor is not disclosed by the record. The land has been sold on execution under this decree and has not been redeemed. In February of 1931 plaintiff moved off of the premises. He leased the premises to a third party for one year ending March 1, 1932. It seems that all the complications had produced a complete stalemate, which was only broken by the possibility of securing the insurance money.

After this action to recover the insurance money had been commenced and the insurance company had admitted its liability under the policy, Sunderland, a son-in-law of Read, who had in the meantime acquired Read's notes in the sum of $15,000 secured by assignment of the contracts, intervened and sought to recover the proceeds

of the policy. Intervener claimed as assignee of Read. His claim is based on the following language of the contract: "Second party (plaintiff) shall * * * keep up the insurance on said premises in not less than $——— for party of the first part." It will be conceded (although it is not decided) that the quoted clause obligated the plaintiff in the first instance to carry insurance for Read and that Read's rights in relation to the collection of the insurance money is analogous to that of a mortgagee. For the purpose of this case intervener stands in Read's shoes. Concerning the situation thus conceded, intervener says in argument:

"There can be no question but what this real estate contract, although made in 1925, and never consummated, is still in force as between these parties. Martinsen must concede this proposition. He had no other right to the possession of the real estate, except under this contract. He had no right to insure the buildings, except on the theory that this contract was still in full force and effect and gave him an equitable interest in the land. On the other hand, the intervener is in court insisting that the contract is still in full force and effect, and tendered at the time of the trial full and complete performance thereof."

Intervener claims that the contract is in force. He must, of course, do this, for he did not have title to the land. Any claim on his part must be based on the contract and his assignment of it. But he also contends that plaintiff cannot sustain his claim unless the contract is in force because the existence of the contract in force is essential to an insurable interest in the property in plaintiff. Intervener argues that plaintiff is in a dilemma in which if he denies the contract he cannot recover the insurance money from the insurance company, and if he admits the contract he must admit that the insurance was carried for intervener. Plaintiff, however, denies that the contract is enforceable by intervener. The question of insurable interest is not in the case. The defendant insurance company admits its liability under the policy. It has offered to pay the money on the policy. The policy is in the name of plaintiff. Unless intervener has a right to the money, it must be paid to plaintiff. Plaintiff is not in a position between the insurance company and intervener where, if he escapes one, he must be swallowed up by the other. He is in a position in which he can safely deny that intervener is entitled to enforce the contract.

And, regardless of this situation, plaintiff has certain rights which are in no wise dependent upon continued enforceability of the contract. He has paid $7,200 on the purchase price of the land. He has paid a number of installments of interest on the $31,700 mortgage, subject to which he had agreed to take title, but which he had not agreed to assume or to pay. Larson v. Metcalf, 201 Iowa 1208, 207 N. W. 382, 45 A. L. R. 344. If in this situation the insurance company felt that plaintiff had such interest in the property that it deemed it wise to admit its liability on the policy, it does not lie in the mouth of intervener to say that such interest was not insurable. We are not concerned with the question whether plaintiff's interest was or was not insurable. The parties interested in that question have answered it themselves.

If intervener is entitled to all or any part of the insurance money, it must be on the theory that he can enforce the purchase contract by having it adjudged that the policy, issued nearly five years after the date of the contract, was obtained for him. Intervener says that he tendered performance at the time of trial in February of 1933, more than seven years after the date of the contract and almost exactly seven years after the date fixed by the contract for performance. A question exists, which we do not answer, whether the tender made at the time of trial was effective, even though timely, in view of the fact that a sheriff's certificate of sale was outstanding under the foreclosure proceedings under the $31,700 mortgage, subject to which mortgage the title was to be taken but which plaintiff had not assumed or agreed to pay. We have indicated the belief that the delay in making title and tendering performance was too great. It must be held that intervener was in default on the purchase contract and that he is not entitled to the insurance money.

The judgment of the trial court will be reversed, and the case remanded to the trial court for the entry of judgment against the defendant in favor of plaintiff for the full amount due under the policy and for costs incurred prior to the filing of the petition of intervention and against intervener for all other costs in the trial court and in this court. The record before this court does not enable it to determine the rights of attorneys for plaintiff under their claim for an attorney's lien upon the judgment. Such rights will be determined in the trial court.

Reversed and remanded, with directions.

ALBERT, C. J., and EVANS, KINDIG, and DONEGAN, JJ., concur.