169 P.2d 238

**LOYD et al. v. SOUTHWEST UNDERWRITERS et al.**

No. 4909.

Supreme Court of New Mexico.

Jan. 28, 1946.

Rehearing Denied June 8, 1946.

Edwin Mechem and Thos. B. Rapkoch, both of Las Cruces, for appellants.

W. C. Whatley and R. C. Garland, both of Las Cruces, for appellees.

MABRY, Chief Justice.

Appellants Odell Loyd and Murle Lou Loyd entered into a contract with Marvin Mitchell and Lillie Mitchell, his wife, by which the Mitchells agreed to sell and appellants agreed to purchase a quarter of section of land in Luna County together with a certain piece of personal property for the total price of $4,000, $1438 of which was to be paid in cash and the balance to be paid in four equal instalments of $640.50 each, the deferred payments to be evidenced by four promissory notes. The contract provided that the $1438 was to be deposited with appellees, Southwest Underwriters of Deming, New Mexico, a copartnership, the Mitchells, by their contract, warranting and agreeing that they "owned the property free and clear of all liens and encumbrances" excepting a mortgage on the real estate in the sum of $600, which they assumed and agreed to pay. The Mitchells agreed to furnish an abstract of title showing good and merchantable title and providing that should they not be able to give a good and merchantable title to the premises, the $1438 down payment which was to be deposited with appellee Underwriters was to be returned to appellants and the contract then to become null and void. The Mitchells agreed to furnish an abstract of title within thirty days of

the date of the contract and appellants were to have sixty days from that date to have completed the examination thereof to determine whether the Mitchells had a good and merchantable title to the premises, subject to the mortgage above referred to.

The down payment was deposited with the Southwest Underwriters and abstract of title was furnished within the time agreed upon, from which it was disclosed, by an examination, also made within the sixty days, that aside from the $600 mortgage indebtedness due, that one Leroy Pelayo had a one-sixteenth interest in the land which had not been acquired, and which had not yet been acquired at the time of the suit, some fifteen months after the making of the contract. Appellants, without joining the Mitchells, sued the escrow agent, the Southwest Underwriters, and Josephine K. Smith, manager of the agency, for the return of the $1438 so deposited as representing the initial payment so made. Upon trial appellees moved the court to dismiss and the cause was dismissed for the reason the Mitchells were not made parties to the suit, the court holding that they, the vendors under the contract, were necessary parties to a final determination of the issues; appellants declined to amend their pleadings to bring in the Mitchells as parties defendant, elected to stand upon their complaint, judgment was entered dismissing the cause and this appeal follows. The right of the Mitchells to intervene, or the right of the appellees,

as defendants, to interplead them, neither of which was done, is conceded. Appellants say that under the circumstances the Mitchells have no interest in the deposit, and are not necessary parties. Appellees contend that it was not their duty to interplead them, in any event.

Whether the Mitchells, objecting to the return of the deposit, should have been made parties defendant, and whether in fact appellants had a cause of action, must be determined from a consideration of the terms of the contract of sale. It is desirable that the entire contract be set out and noticed in this connection.

"This Contract, made and entered into this 23rd day of July, A.D. 1943, by and between Marvin Mitchell and Lillie Mitchell, his wife, the parties of the first part, and Odell Loyd and Murle Lou Loyd, the parties of the second part.

"For and in consideration of the sum of Four Thousand and No/100ths Dollars ($4,000.00), the parties of the first part agree to sell and the parties of the second part ageee to buy that certain property located in the Village of Deming, County of Luna, State of New Mexico, and more particularly described as follows, to-wit:

"The southwest quarter (SW¼) of Section Twenty-Seven (27), in Township Twenty-Six (26) South, of Range Nine (9) West of the New Mexico Meridian, New Mexico, containing one hundred sixty (160) acres, more or less, also One

Peerless Pump Serial No. 15370, complete with Chevrolet Motor.

"Parties of the Second Part agree to pay the sum of Four Thousand and No/100ths Dollars ($4,000.00) in the following manner, to-wit:

"The sum of Fourteen Hundred Thirty-Eight and No/100ths Dollars as of the date of this contract and same is hereby deposited in escrow with the Southwest Underwriters, of Deming, Luna County, New Mexico, to be distributed as hereinafter stipulated. The remainder of Twenty-Five Hundred Sixty-two and No/100ths Dollars ($2562.00) is to be paid in four (4) equal installments of Six Hundred Forty and 50/100ths Dollars ($640.50) with interest at the rate of six per cent (6%) from date hereof, the first installment to become due and payable on August 1st, 1944, 2nd installment on August 1st, 1945, 3rd installment on August 1st, 1946, and 4th installment on August 1st, 1947, all according to the terms and conditions of the four promissory notes attached hereto and made a part of this contract.

"Parties of the First Part Warrant that they own the said property above described free and clear of all liens and encumbrances excepting a mortgage in the amount of Six Hundred Dollars ($600.00) dated January 22, 1943, made payable to Lona Pelayo Nugent, due at the rate of $300.00 annually with interest at six per cent (6%) beginning January 1st, 1944, which said parties of the first part assume and agree to pay in accordance with the stipulations hereinafter recited herein.

"Parties of the First Part Agree to furnish an Abstract of Title to the said property within the next (30) days and it is understood and agreed that parties of the second part shall have possession of the said Abstract of Title for examination by their attorney, which said examination shall be made within the next sixty (60) days from date hereof. Should the said Attorney find from his examination that parties of the first part have a good and merchantable title to the said premises subject to the said mortgage herein described, then said parties of the first part shall cause the said Abstract of Title to be brought down to date showing the Release of the said Mortgage.

"The Southwest Underwriters of Deming, New Mexico, is hereby named as trustee for the parties hereto and a copy of this contract, together with warranty deed and bill of sale, has been filed with the said Southwest Underwriters. All payments of principal and interest as provided herein shall be paid to the said Southwest Underwriters.

"It is Understood and Agreed between the parties hereto that the said sum of Fourteen Hundred Thirty-eight and No/100ths Dollars ($1438.00) shall be deposited with the Southwest Underwriters for parties of the first part to be held in escrow until such time as the said Abstract of Title shall have been examined,

attorney's opinion given and a clear and merchantable title vested in parties of the first part. It is also Understood and Agreed that the parties of the first part now have a crop on the said premises which the parties of the second part agree to harvest, That parties of the second part are to be given immediate possession of the said premises but should the parties of the first part not be able to give a good and merchantable title to the said premises, then parties of the second part will give up said premises, retain the proceeds from the crop and the said sum of $1438.00 in escrow with the Southwest Underwriters shall be returned to parties of the second part and this contract shall become null and void.

"Parties of the First Part assume and agree to pay all taxes and assessments due for and during the year 1943.

"It is Further Understood and Agreed between the parties hereto that when the Abstract of Title has been examined and good and merchantable title has been proven, the said escrow holder is directed to pay to the said parties of the first part, the said sum of $1438.00 which has been held in escrow as being the down payment on the purchase of the premises described.

"It is Further Understood and Agreed that the Peerless Pump described herein is not to be removed from the said premises during the term of this contract. Parties of the First Part reserve and retain all farm implements now located on the property herein described, and have per-mission to remove the same after the title to said premises has been determined.

"It is Further Understood that upon payment being made in full the said trustee is authorized and empowered to deliver warranty deed, bill of sale, and abstract to parties of the second part. Should the payments not be made in accordance with this contract after the expiration of the grace period hereinafter stipulated, parties of the first part may declare this contract null and void. In this event, after written notice to the parties of the second part and at the option of the parties of the first part, deed, bill of sale and abstract shall be returned to parties of the first part and this will conclude the trust of the said trustee. All payments received by the said trustee shall be credited to parties of the first part.

"It is Specifically Understood that time is of the essence of this contract and that should the parties of the second part fail to pay any installment of either principal or interest or taxes within sixty (60) days of the due date thereof, then this contract at the option of the parties of the first part may be declared null and void. In this event, all previous payments made shall be construed as rental or liquidated damages and parties of the second part waive any right to recover the same. In the event of forfeiture, parties of the second part agree to give immediate possession upon demand.

"This Contract Shall be binding upon the heirs, administrators and assigns of all

parties hereto in the same manner as upon the principals themselves.

"In Witness Whereof, we have hereunto set our hands and seals the day and year in this contract first above written."

If it may be said that the escrow agent, by the terms of the contract, under which it undertook to act, had resting upon it prior to the time of suit a clear directive to return the deposit upon the failure of the Mitchells to furnish an abstract showing a good and merchantable title, the trial court was in error, since the Mitchells, the vendors, were not necessary parties to the suit. While on the other hand, if it may be said that the Mitchells had, as claimed by appellees, a "reasonable time" in which to clear the property of encumbrances and of the outstanding one-sixteenth interest in the land, no duty rested upon the escrow agent to return the money until the question of whether such reasonable time had elapsed should be determined, and the Mitchells would be necessary parties to the suit. Reasonable time for vendor to perfect title is a question of fact, not law. Smith v. David, 168 Ga. 511, 148 S.E. 265.

The rules governing the alternate situations mentioned above are not disputed by the parties. The one applicable to the first situation described is thus stated in 30 C.J.S. Escrows § 16, page 1220:

"Generally, a person having no interest in the matter in escrow is not a necessary party to a suit for its recovery. Accordingly, the depositor may sue the depositary for return of the deposit on nonperformance of the conditions by the obligee without joining the latter as a party defendant. So, also, in an action against a depositary for refusal to deliver a deed to the grantee on the performance of the conditions prescribed in the escrow agreement, the grantor need not be joined as a party defendant; and the grantee may sue a third person to whom the depositary has wrongfully delivered the property without joining the depositary or the grantor as parties."

We find this language employed by the text-writer in American Jurisprudence:

"It is the well-established rule that where the conditions are fulfilled and the depositary fails or refuses to deliver, the remedy, either in law or equity, lies against him, but not against the grantor. Notwithstanding the general rule, however, in many instances both the depositary and the other party to the escrow agreement have been joined as defendants in an action brought at law or in equity, apparently for the reason that in many cases, fulfilment of the conditions as a cause of the depositary's failure is at issue." 19 Am.Jur. 453, Sec. 33.

And see Ann. in 95 A.L.R. 299; J. and V. Liberty Inc. v. Columbia Trust and Savings Bank, 121 Or. 289, 254 P. 1016.

Counsel do not disagree upon what the rule would be if this be a case where a definite time limit is set for the perform-

ance of the contract to furnish a good and merchantable title. They do differ upon the question of whether this be such a case. Appellants say that under the terms of the contract the absolute duty to return the money arose when, upon the primary examination of the abstract, only one examination being contemplated, it was shown that an outstanding interest in the land was in Leroy Pelayo (who was then, and at the time of the trial, a prisoner of war of the Japanese); that they were purchasing upon the representation that the Mitchells, at the date of the contract, "owned" the property free and clear of such outstanding claims. Their contention, we may assume from their reasoning, is that they were not purchasing with the condition that they would have to wait for months, or years, to have the title, represented at the time to be free and clear of any such undivided interest, cleared up and made good.

Appellees, on the other hand, say that the contract should be interpreted as giving vendors a reasonable time within which to make a good title. The contract in question is not as artfully drawn as it might have been, but we must take it as we find it and determine therefrom the intention of the parties thereto.

■ The escrow holder's liability is both "fixed and limited" by the contract under which it undertakes to perform the impartial function of stake-holder. Davisson v. Citizens' National Bank et al., 15 N.M. 680, 113 P. 598, 599. In that case,

the holder of the escrow was held not entitled to return the purchase money over the objection of the vendor even though no abstract approved by purchaser's attorney was presented on or before the date "settlement was to be made" between the parties. As this court there pointed out, "There happened no condition, as set forth in the Memorandum, upon the fulfillment of which or failure to fulfill the bank was directed to return the papers to either party." The memorandum agreement under which the bank was acting in that case read: "Check enclosed to be held in escrow until September 10th, when final settlement is to be made. Deed and abstract to be placed in escrow with this. Abstract to be forwarded to the Citizens' Bank and Trust Company, Arkadelphia, Ark., for examination. No money to be paid over until abstract is approved." Clearly, in that case there was no direction to return the deposit to the purchaser under any circumstance. That case affords neither side to the controversy much aid.

It is to be noticed that the Mitchells warranted that they "owned" the property described, subject only to the $600 mortgage mentioned, at the time the contract was entered into. It will be seen that they did not own the property at that time, nor at the time of trial some fifteen months thereafter, since there was an outstanding interest in one Leroy Pelayo.

From the facts pleaded it must be assumed that it would, in any event, require considerable time to get full title to the

property; but we have the undenied allegation of the answer to the effect that the vendors "can and will overcome the only objections made by the said examining attorney to the said title." Appellants contend, simply, that since the vendors did not tender good title earlier, it is now too late. By denying paragraph five of the complaint without further pleading in clarification by answer (as was done as to the point of the part ownership in Pelayo), it might be said that an issue is made of whether the pump and equipment contracted to be sold with the land are the property of the Mitchells; and so we take no further notice of the alleged failure of the title in the Mitchells to this personal property.

And yet, unless the contract provides, either expressly or by necessary implication, that it shall become null and void *if the abstract to be furnished within thirty days does not show marketable title,* a "reasonable time" within which to furnish such title would be allowed, even absent the conventional and frequently employed stipulation to that effect. In such event, the Mitchells would be necessary parties.

Upon examination of the contract as a whole, we are constrained to the view that it was never the intention of the parties that no opportunity would be given to perfect title, if at first found defective. In one part of the contract, if viewed apart from the whole context, it might be said we find language showing an intention to have the one and only examination of the abstract (the one to be made within sixty days from date of contract) final and conclusive upon the question of good title; and yet, when we examine other language of the instrument, thereinafter to be found, wherein it is stipulated that "but should the parties of the first part not be able to give a good and merchantable title to the said premises, then * * * and the sum of $1438.00 in escrow with the Southwest Underwriters shall be returned to the parties of the second part and this contract shall become null and void," we see there is no limitation as to time for making and giving a good title, and the "reasonable time" rule would control. The contract reads: "Should the parties of the first part not be able to give a good and merchantable title to the said premises" but it does not add—"within the time hereinbefore specified for the furnishing and examination of abstract of title," nor does it employ language of like import, making time of the essence in this particular. Had the present contract so provided, in the absence of a waiver, there would be no place for the operation of the "reasonable time" rule which, under many circumstances, is given a very liberal interpretation. And further on in the contract, we find this language: "When the abstract of title has been examined (it does not say: "Within the time hereinbefore provided"), and good and merchantable title has been proven, the said escrow holder is directed to pay to the said parties of the first part the sum of $1438.00 which has been held in escrow * * *."

■ There is ample authority to the effect that the vendor, in the absence of a contrary contractual commitment, may have a reasonable time to perfect title. Martinson v. Morton Farmers' Mutual Ins. Ass'n., 217 Iowa 335, 251 N.W. 503; Smith v. Biddle, 171 Ark. 644, 286 S.W. 801; Foster v. Elswick, 176 Ark. 974, 4 S.W.2d 946, 57 A.L.R. 1244; Ward Real Estate v. Childers, 223 Ky. 302, 3 S.W.2d 601. Whether special circumstances, absent here, imposing undue hardship would alter application of the rule, we do not attempt to say.

In another place in the contract we find the parties stipulating that the sum of $1438 is to be deposited with Southwest Underwriters "to be held in escrow until such time as said abstract of title shall have been examined, attorney's opinion given, and a clear and merchantable title vested in the parties of the first part." Nothing there which would indicate that time is of the essence or that the attorney's opinion to be given and the vesting of a clear and merchantable title should be limited by any particular period of time.

But for the clause theretofore set out in the contract providing "that parties of the second part shall have possession of said abstract of title for examination by their attorney, which said examination shall be made within the next sixty (60) days from date hereof," there would be nothing upon which appellants could base their claim; and, as we have heretofore noticed, viewing the whole context, it can-not be said that the parties intended to limit the time for the perfection of title to the sixty day period allowed for the primary examination of the abstract to be tendered.

"If the contract is silent in respect of the condition of time or fails to indicate a distinctive purpose of the parties to make it an essential consideration and if there are no circumstances to manifest its importance, a court of equity does not regard time as of the essence. * * * If time becomes material to the rights and interests of the parties to any substantial degree, it will be regarded as of the essence. It must affirmatively appear, however, that the parties regarded time as of the essence of the agreement." 12 Am.Jur. 863, Sec. 308.

■ It is to be noticed that in the third from the last paragraph of the contract time is made of the essence of the contract, and, this, appellants aver, would lend support to their contention that it was the intention of the parties that title should be perfected and a clear and merchantable title tendered within the sixty day period. We do not agree with this construction. There can be no doubt that this conventional contractual clause was intended only for the benefit of the vendor who, at his option, upon the failure of the vendee "to pay any installment, * * * or taxes within sixty days of the due date thereof" could declare the contract null and void.

It is to be conceded that "time-of-essence" clauses frequently apply to both the vendor and vendee, and yet, cases of con-

struction arise, as here, where such language of the contract taken in connection with the whole subject-matter thereof, indicates a more limited operation of the time-of-essence provision. See Williams v. Shamrock Oil and Gas Co., 128 Tex. 146, 95 S.W.2d 1292, 107 A.L.R. 269, where a contention somewhat like appellants here make was there unsuccessfully urged. The Texas court in that case held that such clause was placed in the contract "in such setting as to evidence that it was intended to have reference alone to the covenants" of the purchaser. See also Newton v. Hull, 90 Cal. 487, 27 P. 429, and Greene v. Riordan, 97 Cal.App. 462, 276 P. 141.

Absent an express stipulation which would make the time for the tendering of a good and merchantable title of the essence, "or unless there is something connected with the purpose of the contract and the circumstances surrounding it which makes it apparent that the parties intended that the contract must be performed at or within the time named," the tendency of modern authority at law as well as in equity is to hold that time is not ordinarily of the essence of the contract. 12 Am. Jur. 861, Sec. 306. We attach no significance to that feature of the contract as having any reference to the time within which a good and merchantable title must be tendered.

■ Since we construe the contract as one under which the vendors would have a reasonable time for the perfection of title, and this issue of what is a reasonable time being a question of fact, as we have said, the Mitchells, the vendors, became, and are, necessary parties to a complete determination if the suit and the trial court was correct in dismissing for want of such necessary parties.

■ It does not make for a different result that the Mitchells could have been impleaded by appellees, or could have themselves come into the suit by intervention or otherwise. And, the fact that the court could, "of its own initiative," have added the name of the Mitchells as parties defendant, section 19-101, rule 21, 1941 Comp. Laws, does not change the picture. Appellants were resting their case upon the theory that the Mitchells had no interest whatever in the controversy; that it was unimportant that, if given time, the vendors could thereafter perfect title. Appellants had advised the court, as the judgment recites, that they elected not to amend and bring in the additional parties, but desired to stand upon their complaint as written, and "to insist upon the cause preceding to final trial and determination with the present parties defendant only". Naturally, under this circumstance, plaintiffs having the control of the lawsuit, it could not be said that the court's discretion under the rule just mentioned ought to have been moved in plaintiff's behalf by adding additional parties defendant. When it appears that the vendors are necessary parties and the complainants (appellants) refused to amend to bring them in, the court had no authority to determine the issues involved and the cause was properly dis-

missed. Finding no error the judgment is affirmed, and it is so ordered.

SADLER, BICKLEY, BRICE, and LUJAN, JJ., concur.